Opinion
MILKES, J.
We have consolidated for decision convictions for trespass, obstruction of a street and/or sidewalk during demonstrations by nuclear protesters at General Dynamics and the United States Navy Submarine Base at Ballast Point. Defendant Weber’s sentence was modified to 90 days custody with 78 days suspended and 10 days community service. Defendants Barbara Owen and David Owen received six months in custody, forty-five days of which were suspended. Defendant Phipps was sentenced by the court to six months in custody, with one day suspended.
I
All of the defendants raise similar contentions on appeal:
(i) The trial court’s refusal to allow the defense of necessity;
(ii) The duty to instruct the jury regarding international law;
(iii) The trial court’s failure to instruct the jury sua sponte regarding a good faith belief to negate malice. All of the defendants made a knowing and intelligent election of self-representation.
II
Defendants philosophically suggest in their briefs that during the last quarter century, this “country has witnessed arduous, lengthy and eventu *Supp. 4 ally successful efforts of public demonstrations to alter first private views, then national policy, on racial, sexual discrimination and the Vietnam war.” Appellants contend that they were thwarted in presenting evidence to the jury that their actions were motivated by a sincere belief in discussing and publicizing the dangers of nuclear weapons.
Ill
Peaceful demonstrations, protests and dissent need no defense; they are the cornerstone of a society based on the rule of law. As suggested by Justice William O. Douglas, the right to dissent “is the only thing that makes life tolerable for a judge on the appellate level.” All thoughtful persons remember the horror and sorrow of Hiroshima and Nagasaki. But we are confronted with a more complex resolution than may be determined by raising a single moral issue. We must respect, above all, the pluralism that simply does not see nuclear disarmament and other emotional issues from the same single perspective. Our concern cannot be a single dimension. We must be equally concerned with the protection of rights, including property rights of others. We do not see all things or all issues from the same angle; nor do we all march to the same drummer.
The Defense of Necessity
I
The court in the Weber trial denied the defense of necessity. The court in the Phipps and Owen trial instructed the jury on the defense of necessity. In both trials, both juries convicted. It would, perhaps, be simplistic but not necessarily irrelevant to conclude that the defense of necessity is not such a pivotal issue for the defendants as their protestations imply.
In People v. Patrick (1981) 126 Cal.App.3d 952 [179 Cal.Rptr. 276], which involved the issue of deprogramming a suspected “cult” member, the Court of Appeal, in rejecting a defense of necessity, exposited: “First, although the exact confines of the necessity defense remain clouded, a well-established central element involves the emergency nature of the situation, i.e., the imminence of the greater harm which the illegal act seeks to prevent. . . . The commission of a crime cannot be countenanced where there exists the possibility of some alternate means to alleviate the threatened greater harm.” (At p. 960.)
In People v. Pena (1983) 149 Cal.App.3d Supp. 14 [197 Cal.Rptr. 264], the Appellate Department of the Los Angeles Superior Court held that a defendant was entitled to an instruction on the defense of duress to a charge *Supp. 5 of driving while intoxicated. The defendant, out of a fear for his girlfriend’s safety, followed the police vehicle and was arrested. The court explicated: “We hold that a defense of duress may properly be predicated upon threats of harm to persons other than the accused.” (Id., p. Supp. 25.)
II
There must be a showing of imminence of peril before the defense of necessity is applicable. A defendant is “not entitled to a claim of duress or necessity unless and until he demonstrates that, given the imminence of the threat, violation of [the law] was the only reasonable alternative.” U.S. v. Bailey (1980) 444 U.S. 394, 411 [62 L.Ed.2d 575, 591, 100 S.Ct. 624], The uniform requirement of California authority discussing the necessity defense is that the situation presented to the defendant be of an emergency nature, that there be threatened physical harm, and that there was no legal alternative course of action available.
III
To accept the defense of necessity under the facts at bench would mean that markets may be pillaged because there are hungry people; hospitals may be plundered for drugs because there are those in pain; homes' may be broken into because there are unfortunately some without shelter; department stores may be burglarized for guns because there is fear of crime; banks may be robbed because of unemployment. The defense of necessity is not a cause or a potentiality. It must be articulable to an immediate, imminent fear and compulsion. Some might argue that the apprehension of a nuclear holocaust is more than a potentiality; it is survival. But it is equally arguable that hunger, pain and shelter are to those in need, similarly, issues of survival. There were other forms of protest available to the defendants which disembowel the defense of necessity. In metropolitan areas, demonstrations and protests which are conducted within the law and without arrest are almost a daily occurrence.
The court in the Weber trial correctly refused the defense of necessity. The court in the Phipps and Owen trial erred in giving any instructions on the defense of necessity. While it may be contended that once the court gave an instruction on the necessity issue, it was required to give a complete and correct statement of law, we find nothing in the record that persuades us of a reversible error on this issue.
International Law
I
The defendants urge that the trial court had a duty to instruct the jury that it could find that they were obligated to prevent conduct deemed *Supp. 6 criminal under international law. They cite as authority the Nuremberg Charter and the Tokyo War Crimes decision. “Anyone with knowledge of illegal activity and an opportunity to do something about it is a potential criminal under international law unless the person takes affirmative measures to prevent the commission of the crime.” (Friedman, The Law of War: A Documentary History (1972) at p. 1029.) Defendants, in their pro. per. briefs filed with the trial court, expressed their personal conflict: “An individual American citizen is in violation of international law if she or he consents to cooperate with any government which produces, possesses or uses nuclear weapons .... Surely we are bound by the Nuremberg obligation to speak out against a nuclear crime.”
II
Our legal analysis must necessarily be dispassionate and analytical. But this should not be interpreted as insensitivity for those defendants whose moral convictions led them inevitably to penal convictions. We are not unmindful of the poignant prose of the German clergyman who after the war became a pacifist. Of the Nazi takeover, he said: “In Germany, they came first for the Communists, and I didn’t speak up because I wasn’t a Communist. Then they came for the Jews, and I didn’t speak up because I wasn’t a Jew. Then they came for the trade unionists, and I didn’t speak up because I wasn’t a trade unionist. Then they came for the Catholics, and I didn’t speak up because I was a Protestant, [f] Then they came for me, and by that time, no one was left to speak up.”
III
However, it is unfocused to attempt to correlate international law to blocking streets, sidewalks, and trespassing on private property. There are many international causes. To violate state and local laws primarily designed to facilitate the public movement because of one’s perception under the aegis of international law would foment an anarchical result. There were other demonstrators who were expressing their abhorrence of the manufacture of nuclear weapons without blocking traffic or refusing to leave private property. There is no reason to believe that impeding the flow of traffic averts perceived repugnance under international law. The defendants, perhaps without realizing it, affirmed their own misdemeanor convictions by conceding the necessity to speak out against the nuclear crime. Freedom of expression and speech is a constitutionally protected right; this does not extend to disruptive activity and the impingement on the rights of others.
*Supp. 7 Intentions, Good Faith and Malice
I
Defendants urge that the court had a duty sua sponte to instruct the jury that a good faith belief in their actions would negate malice. The mens rea requirement of trespass, Penal Code section 602, subdivision (n), is “willfully.” That term is defined in Penal Code section 7, subdivision (1) as “a purpose or willingness to commit the act or make the omission referred to. It does not require an intent to violate law, or to injure another, or to acquire any advantage.” However, the defendant convicted of Penal Code section 647c is correct in his contention that the section requires malice. It defines the offense as “every person who willfully and maliciously obstructs the free movement of any person on any street, sidewalk or other public place open to the public is guilty of a misdemeanor.”
II
It is naiveté to infer that the jury was not aware of the defendants’ purpose in blocking traffic. The verdict form contained a finding of willfully and maliciously obstructing free movement. One does an act “willfully” when he intends to do such act; and one does an act “maliciously” when he intends to do such act and knows that it is a wrongful act, i.e., one banned by law. In this case, the defendants’ intention to obstruct the street and sidewalk was done with the knowledge that such obstruction was a wrongful act. However laudable the defendants’ motives may be, it was not required of the trial judge to sua sponte instruct on a matter which was not a negation of the elements of the offense. (People v. Man (1974) 39 Cal.App.3d Supp. 1 [114 Cal.Rptr. 237].)
Sentencing Error
The remarks of the sentencing judge of defendants Phipps and Barbara and David Owen explain, without our need for discussion, the severity and disproportionality as compared with the sentences of other demonstrators. We rely on the record:
“If your justification is religious convictions, how can you justify forcing your position on others, even though the Ten Commandments tell us that we shall not (a) kill, (b) commit adultery, (c) steal, (d) covet our neighbor’s wife nor anything that is our neighbor’s. ... You also stole General Dynamic’s possession, the police officers’ services, and the court’s time. The total value of the thefts would constitute felonies. ... So your violations were not only legal but moral violations. ... On seriousness we have (1) *Supp. 8 the tie-up of General Dynamics’ people and police officers, (2) the use of court time to attempt to affect public opinion and gain attention, rather than to try the case, (3) the three thefts previously mentioned, and (4) the intent to continue. . . . For civil disobedience the price is punishment. For war the price is ofttimes death.”
A court cannot impose a harsher sentence merely because the defendant pleads not guilty and exercises his right to a jury trial.
“A trial court cannot impose a more severe punishment on the basis of its conclusion that a defendant who has pleaded not guilty presented a frivolous defense or that he presented it in bad faith, and the same would be true if the basis of the more severe punishment was partly the fact that the defendant had availed himself of the right to trial and partly the serious nature of the offense.” (People v. Morales (1967) 252 Cal.App.2d 537 [60 Cal.Rptr. 671].)
The sentencing judge’s equation of three thefts together with the inconvenience to the court as equaling felonies was an improper standard for sentencing.
Disposition
All of the convictions as to all defendants are confirmed. The cause regarding defendants Phipps, Barbara and David Owen is remanded to the trial court with directions to set aside the sentences and to resentence as to those defendants.
Woodworth, P. J., and McConnell, J., concurred.
A petition for a rehearing was denied October 19, 1984.