[No. A027439. First Dist., Div. Three. Jan. 25, 1985.]

In re DAVID WELLER et al., on Habeas Corpus.

Counsel

Howard C. Anawalt, Sheldon Portman, Public Defender, and Aram B. James, Deputy Public Defender, for Petitioners.

Stephen N. Brannon, Alan Ramo, Leonard Post, Andrew Lichterman and Kathryn Seligman as Amici Curiae on behalf of Petitioners.

John K. Van de Kamp, Attorney General, and Clifford Thompson, Deputy Attorney General, for Respondents.

Pillsbury, Madison & Sutro, Walter R. Allen and Kevin M. Fong as Amici Curiae on behalf of Respondents.

Opinion

**WHITE, P. J.**—Petitioners, disappointed in the political process and frustrated with lawful means of disseminating antinuclear weapons information, trespassed at Lockheed Missiles and Space Corporation. After having been warned that their actions were prohibited, they went on Lockheed property to offer leaflets to entering employees. They were convicted of trespass, a misdemeanor, and were sentenced to 45 days in jail, suspended upon pay-

ment of a $150 fine and completion of a period of community service. They claim here that the trial court erred in barring their defense of necessity. We disagree.

The essence of petitioners' offer of proof was that they felt they had no choice but to trespass on the Lockheed premises because they believed that their presence would bring an end to the threat of nuclear holocaust. They offered the testimony of Robert Aldridge, a former Lockheed design group leader involved in development of the Trident Missile. He would have testified that the Trident Missile represented a shift from deterrence to an aggressive first strike capability and made nuclear war imminent. He would have testified about the possibility of nuclear holocaust by accident and would have explained his view that the Trident System would have a destabilizing effect on international relations.

Petitioners contend that their offer of proof met all the requirements for the defense of necessity and that the trial court committed prejudicial error in failing to permit them to present the defense for consideration by the jury. They cite the principle that "[d]oubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused" (*People* v. *Flannel* (1979) 25 Cal.3d 668, 685 [160 Cal.Rptr. 84, 603 P.2d 1]) and argue that each of the prerequisites set forth in *People* v. *Pena* (1983) 149 Cal.App.3d Supp. 14 [197 Cal.Rptr. 264] has been met.

The necessity defense has an uncertain status in California law, leading one commentator to ask: "Does the necessity defense exist, or doesn't it; and, if it does, on what basis? In a metaphorical sense, it resembles a scientific phenomenon that indisputably exists, but in apparent defiance of natural law." (Berry, Jr., *The Mysterious Defense of Necessity* (1979) 54 State Bar.J. 384.) This uncertainty stems from the absence of a statute articulating the defense of necessity and from pronouncements that the common law is not a part of criminal law in California (see, e.g., *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 632 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *People* v. *Whipple* (1929) 100 Cal.App. 261, 262 [279 P. 1008]).

Uncertain parentage notwithstanding, the necessity defense has grown through a series of appellate court opinions following the lead of *People* v. *Lovercamp* (1974) 43 Cal.App.3d 823 [118 Cal.Rptr. 110, 69 A.L.R.3d 668]. *Lovercamp* applied the doctrine to a prison escape case and set forth stringent rules for its application: "From all of the above, we hold that the proper rule is that a limited defense of necessity is available if the following conditions exist: (1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

[¶] (2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; [¶] (3) There is no time or opportunity to resort to the courts; [¶] (4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and [¶] (5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." (*Id.*, at pp. 831-832.)

In *People* v. *Wheeler* (1977) 68 Cal.App.3d 1056 [137 Cal.Rptr. 791], this division found the conditions of *Lovercamp* had not been met but did not question the status of the defense (see also *People* v. *Condley* (1977) 69 Cal.App.3d 999, 1008-1013 [138 Cal.Rptr. 515]). In *People* v. *Patrick* (1981) 126 Cal.App.3d 952 [179 Cal.Rptr. 276] and *People* v. *Pena* (1983) 149 Cal.App.3d Supp. 14 [197 Cal.Rptr. 264], the necessity defense has been extended beyond the prison escape setting and made subject to a different set of rules. In *People* v. *Patrick,* a cult "deprogrammer" was denied an instruction on the necessity defense to charges of kidnaping. The appellate court assumed "arguendo" that such a defense was available under California law but found the offer of proof deficient. The court found that the defendant had not demonstrated that he personally possessed a belief in the necessity of criminal action or demonstrated that there existed a danger of imminent physical harm to the alleged cult member/victim.

*People* v. *Pena, supra,* 149 Cal.App.3d Supp. 14, presents the most comprehensive discussion by a California Court of the necessity defense as it applies outside the prison escape setting. There, a defendant charged with misdemeanor drunk driving was denied an instruction that he drove the car in good faith belief that his girlfriend might be in physical danger and that he might need to protect her. The danger he perceived was from a police officer who searched her and drove her home. The circumstances of the search and transportation were sufficiently peculiar to warrant an instruction on the necessity defense.

Sometimes describing the "necessity" defense as the "duress" defense, the *Pena* court made the following observations about the law in California: "Although California law regarding the 'justification' defenses (i.e., 'duress,' 'necessity,' 'compulsion,' etc. see, fn. 2, *ante*) appears sparse in comparison to that of most American jurisdictions, there nonetheless exist several Court of Appeal decisions which provide some guidance as to the parameters of those defenses—most recently the court in *People* v. *Patrick* (1981) 126 Cal.App.3d 952 [179 Cal.Rptr. 276], noted that: '[A]lthough the exact confines of the necessity defense remain clouded, a well-established central element involves the emergency nature of the situation, i.e., the imminence of the greater harm which the illegal act seeks to prevent.

(See *State* v. *Johnson* (1971) 289 Minn. 196 [183 N.W.3d 541, 45 A.L.R.3d 1432].) ■ The commission of a crime cannot be countenanced where there exists the possibility of some alternate means to alleviate the threatened greater harm.' (126 Cal.App.3d at p. 960.)

"In the leading California case regarding the applicability of the duress defense to a charge of prison escape, *People* v. *Lovercamp* (1974) 43 Cal.App.3d 823 [118 Cal.Rptr. 110, 69 A.L.R.3d 668], the court fashioned a five part judicial test for determining the availability of the defense. In such cases, the *Lovercamp* court observed that it was not formulating a new rule of law, but rather was applying 'rules long ago established in a manner which effects fundamental justice.' (43 Cal.App.3d at p. 827.) In *People* v. *Graham* (1976) 57 Cal.App.3d 238 [129 Cal.Rptr. 31], it was held that the burden of proof in cases in which duress was asserted by a defendant, required only that the defendant 'raise a reasonable doubt that he had acted in the exercise of his free will.' (57 Cal.App.3d at p. 240.)" (149 Cal.App.3d at pp. Supp. 21-22.)

After concluding that the defense could be used to justify any crime except murder and that the defense was available to a defendant who acted to prevent imminent harm to a third party, the court went on to say: "The following requirements have traditionally been held to be prerequisites to the establishment of the defense of justification/duress: [¶] 1. The act charged as criminal must have been done to prevent a significant evil; [¶] 2. There must have been no adequate alternative to the commission of the act; [¶] 3. The harm caused by the act must not be disproportionate to the harm avoided; [¶] 4. The accused must entertain a good-faith belief that his act was necessary to prevent the greater harm; [¶] 5. Such belief must be objectively reasonable under all the circumstances; and [¶] 6. The accused must not have substantially contributed to the creation of the emergency. [¶] These determinations are for the trier of fact." (*Id.*, at pp. Supp. 25-26, fns. omitted.)

■ We need not decide whether the necessity defense should be considered a part of California law or whether the *Pena* court's articulation of the factors is too expansive. Even under the broad standards of *Pena,* petitioners' offer of proof was legally insufficient. The most obvious deficiency in the offer of proof is failure to present legally sufficient evidence that petitioners lacked an adequate alternative to criminal trespass.

Although not clearly articulated, petitioners' theory on absence of adequate alternatives seems to depend upon petitioners' having tried lawful leafletting, political campaigning, and other courses of action without successfully averting the threat of nuclear war. Borrowing from *Lovercamp,*

petitioners contend that it is enough for them to demonstrate a history of futile complaints, which makes the right to complain an illusory alternative, and that based upon such evidence a jury should be permitted to conclude that their action was necessary to prevent nuclear war.

The principles of *Lovercamp* do not transfer easily to the American political arena. The prison in *Lovercamp* was not a democratic society, and the defendant there was not protesting a political decision.

National defense policy is made through the political process, to which petitioners and most other citizens have free access. The First Amendment protects the right to lawfully protest any political decision. In a free society neither the political process nor the avenue of lawful protest is an exhaustible remedy for an unwise policy decision.

Both amici curiae in support of petitioners contend that the court should have permitted the necessity defense on the ground that international law compelled petitioners' actions. They interpret development of the Trident Missile system as a violation of international law and contend that any person who does not seek to prevent the violation, by his or her inaction, violates international law. Accepting, for purposes of analysis, the premises that development of the Trident violated international law and that international law requires affirmative action by all citizens to prevent such violation, it still does not follow that affirmative *illegal* action is justified. Again, the issue turns on the availability of lawful means for accomplishing political change. Neither petitioners nor amici cite authority for the proposition that a free and democratic society must excuse violation of its laws by those seeking to conform their country's policies to international law. Compliance with international law must be sought through the ballot box, or, where appropriate, by court action. Illegal conduct designed to influence policies cannot be considered "necessary" where such lawful avenues are available.

We do not mean to ignore or trivialize this country's history of civil disobedience (e.g., the Boston Tea Party, the Underground Railroad, Freedom Marches in the South, and some of the Vietnam War protests). From the perspective of history many unlawful acts may be seen as justified or even "necessary." Some have been rendered lawful by finding constitutional defects in the prohibitory enactments. But the determination that these actions were "necessary" can only be made from a distance, and then not with legal precision. Unless the laws are held unconstitutional, those challenging or defying them must be prepared to bear the short-term conse-

quences of their actions in the hope that society will benefit and that historians will look charitably upon them.[1]

The order to show cause is discharged and the petition for writ of habeas corpus is denied.

Barry-Deal, J., concurred.

**SCOTT, J.**—I concur in the judgment.

As the majority points out, the necessity defense has an uncertain status in California law. On one hand, the California Supreme Court has broadly stated that just as there are no common law crimes in this state, " 'likewise with excuses or justifications—if no statutory excuse or justification apply as to the commission of the particular offense, neither the common law nor the so-called "unwritten law" may legally supply it.' [Citation.]" (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 632 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) As more than one commentator has pointed out, while this state's Penal Code includes a number of common law defenses, such as duress, unconsciousness, and self-defense, there is no code provision recognizing the defense of necessity. (Comment, *Necessity Defined: A New Role in the Criminal Defense System* (1981) 29 UCLA L.Rev. 409, 417, fn. 45; Berry, Jr., *The Mysterious Defense of Necessity* (1979) 54 State Bar J. 384, 385; Gardner, *The Defense of Necessity and the Right to Escape from Prison—A Step Towards Incarceration Free from Sexual Assault* (1975) 49 So.Cal.L.Rev. 110, 133-134.) When the court in *People* v. *Lovercamp* (1974) 43 Cal.App.3d 823 [118 Cal.Rptr. 110, 69 A.L.R.3d 668] held that a limited defense of necessity is available to a defendant charged with escape from prison, it did not discuss the effect of the absence of statutory authority for that defense. Most subsequent cases considering whether the defense applies to offenses other than prison escapes have also ignored this issue. (See, e.g., *People* v. *Patrick* (1981) 126 Cal.App.3d 952 [179 Cal.Rptr. 276]; *People* v. *Weber* (1984) 162 Cal.App.3d Supp. 1, 4-7 [208 Cal.Rptr. 719]; cf. *People* v. *Velasquez* (1984) 158 Cal.App.3d 418, 421-422 [204 Cal.Rptr. 640] [stating that necessity defense in *Lovercamp* based on public policy].)

On the other hand, however, those commentators fail to acknowledge or recognize that the principle that there is no nonstatutory justification or excuse for a criminal act in this state is apparently not an absolute rule. (1

[1]Note the recent decision of the San Diego Superior Court, Appellate Department, in *People* v. *Weber* (1984) 162 Cal.App.3d Supp. 1 [208 Cal.Rptr. 719], in general accord with our views. There nuclear weapons protestors at General Dynamics and a U.S. Navy submarine base were convicted of trespass and obstructing a street and/or sidewalk.

Witkin, Cal. Crimes (1963) § 7, pp. 10-11.) For example, entrapment is a well-recognized defense, and appears to rest on public policy grounds rather than on any statute. (See *People* v. *Barraza* (1979) 23 Cal.3d 675, 686-690 [153 Cal.Rptr. 459, 591 P.2d 947]; see also LaFave & Scott, Handbook on Criminal Law (1972) p. 372.)

In addition, those courts analyzing the "necessity defense" in this state have been uncertain about its elements, and at least one court has discussed the defense as if it were indistinguishable from the defense of duress. (*People* v. *Pena* (1983) 149 Cal.App.3d Supp. 14 [197 Cal.Rptr. 264] [characterizing *Lovercamp* as a "duress" case and using the terms "duress," "coercion," "necessity," "compulsion," and "justification" interchangeably].)

It is apparent from a reading of the cases and commentaries that reasonable minds are in a state of confusion as to nonstatutory defenses and in particular as to the existence and/or scope of the so-called "necessity defense." The law in this area needs to be straightened out by the Legislature. The courts as yet do not appear to be overwhelmed by urgings of a "necessity defense"; however, the fertile minds of the criminal defense bar can be expected to move in this direction. The Legislature should act now, rather than wait until the courts are forced to "legislate" their own solution.

As to this case, however, it is clear that there is no defense by whatever name available to those who trespass or engage in other unlawful conduct to protest governmental policy. Whether the defense is characterized as "necessity" or "duress" or some hybrid of the two, "[u]nder any definition of these defenses one principle remains constant: if there was a reasonable, legal alternative to violating the law . . . the defenses will fail." (*United States* v. *Bailey* (1980) 444 U.S. 394, 410 [62 L.Ed.2d 575, 100 S.Ct. 624]; see, e.g., *United States* v. *May* (9th Cir. 1980) 622 F.2d 1000, 1008-1010 [necessity defense not available to defendants who protest against Trident missile system at naval submarine base by trespassing].) There were other lawful forms of protest available to petitioners, and the trial court correctly rejected their defense of necessity.

Barry-Deal, J., concurred.

A petition for a rehearing was denied February 22, 1985, and petitioners' applications for a hearing by the Supreme Court were denied April 25, 1985. Bird, C. J., was of the opinion that the applications should be granted.