Chester Lewis WILSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–87–254–CR.

Court of Appeals of Texas,
Austin.

Sept. 27, 1989.

Rehearing Denied Oct. 25, 1989.

Cynthia L. Biggers, Willie Schmerler, Austin, for appellant.

Ken Oden, Co. Atty., Alia Moses, Asst. Co. Atty., Austin, for appellee.

Before SHANNON, C.J., and POWERS and SMITH*, JJ.

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See*

Tex.Gov't.Code Ann. § 74.003 (1988).

EARL W. SMITH, Justice.

A jury found appellant guilty of the misdemeanor offense of disruptive activity on a university campus. Tex.Educ.Code Ann. § 4.30(a), (b)(2) (1972). The trial court assessed punishment at incarceration for six months and a fine of $200.00. We affirm.

The State's witnesses testified that at around 7:45 a.m. on Monday, October 20, 1986, appellant and a dozen or so other individuals entered the campus office of the president of the University of Texas at Austin; that one of the individuals quickly announced that the group was "taking over" the office; that the intruders then proceeded to barricade the doorways and disconnect the office's telephones and computers; that they took care to avoid damaging the office furnishings but that some minor damage did occur; and that at around 8:15 a.m. the campus police forcibly entered the office and arrested the intruders, who resisted nonviolently.

Appellant, a graduate student at the university, took the stand in his behalf and testified that he did in fact engage in the conduct alleged; that he engaged in the conduct as a protest of the university's investments in corporations doing business in the Republic of South Africa; that he assumed at the time of the conduct that his actions violated state law; but that at that time he believed his actions were nonetheless authorized by international law because apartheid, the official policy of racial separation in South Africa, is a "crime against humanity."

In his first two points of error, appellant contends, as he did below, that it was error for the trial court to refuse to admit evidence allegedly pertaining to the "necessity" defense, and to refuse to charge the jury on that defense. The evidence that appellant sought to introduce was the testimony of several expert witnesses, who would have testified regarding the economic, social, and political effects of apartheid. Appellant argues that this evidence would have shown that he reasonably believed his conduct was immediately necessary to avoid imminent harm caused by apartheid—not merely the university's invest-

ment policies—and that the need to abolish apartheid clearly outweighed the harm caused by the temporary seizure of the university president's office.

The necessity defense is, of course, a traditional common law defense. *See Woods v. State*, 135 Tex.Crim. 540, 121 S.W.2d 604 (1938); 1 LaFave & Scott, *Substantive Criminal Law* § 5.4 (1986). It has been codified in Tex.Pen.Code Ann. § 9.22 (1974), which provides that a person will not be held liable for conduct otherwise criminal if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

The "reasonable belief" required is a belief that would be held by an ordinary and prudent person in the same circumstances as the actor. Tex.Pen.Code Ann § 1.07(a)(31) (1974). And "ordinary standards of reasonableness" means the standards that an ordinary and prudent person would apply to the circumstances that the actor faced. *Williams v. State*, 630 S.W.2d 640, 643 (Tex.Cr.App.1982).

Section 9.22 "reflects the judgment that such a qualification on criminal liability, like the general requirements of culpability, is essential to the rationality and justice of the criminal law." Model Penal Code § 3.02, comment 1 at 9 (1985). This "qualification on criminal liability" is subject to a number of limitations, however. For example, the actor must have an *actual* and, as noted above, an *objectively reasonable* belief that his conduct is *immediately necessary* to avoid a greater evil. "It is not enough that the actor believes that his behavior possibly may be conducive to ameliorating certain evils; he must believe it is 'necessary' to avoid the evils." *Id.*, comment 2 at 11.

The defendant has the initial burden of producing evidence regarding the necessity defense. Tex.Pen. Code Ann. § 2.03(c) (1974). If the defendant produces evidence, from whatever source and of whatever strength, raising *every* element of the defense, then he is entitled to an instruction on the defense, and the State must disprove the defense beyond a reasonable doubt. *Id.* at (d); *Thomas v. State,* 678 S.W.2d 82, 84 (Tex.Cr.App.1984); *Roy v. State,* 552 S.W.2d 827, 830–831 (Tex.Cr. App.1977), overruled e.g., *Johnson v. State,* 650 S.W.2d 414 (Tex.Cr.App. 1983); *Bobo v. State,* 757 S.W.2d 58, 62–63 (Tex. App.1988, pet. ref'd). An element of the defense is "raised" if there is evidence that a rational juror could accept as sufficient to prove that element. In other words, whether the defense is raised by the evidence is always a question of law. Furthermore, with respect to necessity, a defendant's belief and "standards" *may* be reasonable or unreasonable as a matter of law. *Graham v. State,* 566 S.W.2d 941, 952 n. 3 (Tex.Cr.App.1978); *cf.* Prosser & Keeton, *The Law of Torts* § 37 at 237 (1984) (a defendant's conduct may be reasonable or unreasonable as a matter of law).

When the foregoing principles are applied to the case at bar, we are compelled to conclude that the trial court did not err in ruling to exclude appellant's proffered evidence and charge. Appellant's proffered evidence, even if believed, would not establish a legitimate necessity defense. No person could reasonably believe that the seizure of the university president's office was genuinely *necessary* to stop apartheid. Other, lawful alternatives were available to appellant in his quest to end that oppressive policy. Nor could any person reasonably anticipate that the seizure would actually and directly *result* in the stopping of apartheid, even though it might emphasize to the general public its existence.

Plainly, appellant, like many political protesters before him, is trying to extend the necessity doctrine beyond its strict and logical limits, and to transform it into a principle that results in legalizing criminal activity in the pursuit of political ends. We cannot agree. *See United States v. Kabat,* 797 F.2d 580 (8th Cir.1986); *United States v. Seward,* 687 F.2d 1270 (10th Cir.1982), cert. denied, 459 U.S. 1147, 103 S.Ct. 789, 74 L.Ed.2d 995 (1983); *State v. Marley,* 54 Haw. 450, 509 P.2d 1095 (1973); *Buckley v. City of Falls Church,* 7 Va.App. 32, 371 S.E.2d 827 (1988); Annot., 41 A.L.R. 4th 773, 777 (1985).

We do not question appellant's sincerity; nor do we make any judgment regarding the morality of his conduct. "We counsel only that the fabric of our democratic society is fragile, that there are broad opportunities for peaceful and legal dissent, and that the power of the ballot, if used, is great." *United States v. Kroncke,* 459 F.2d 697, 704 (8th Cir.1972).

Points one and two are overruled.

In points three and four, appellant argues the trial court erred in refusing to admit evidence concerning a "public duty" defense, and in refusing to charge the jury on that defense. Appellant relies on Tex. Pen. Code Ann. § 9.21 (1974) that provides, in relevant part, that conduct that is otherwise criminal "is justified if the actor reasonably believes the conduct is required or authorized by law." Appellant contends that international law authorized his actions because apartheid violates international law. The excluded evidence was expert testimony on international law.

We find appellant's argument unpersuasive for the reasons discussed under points one and two: we find it unreasonable as a matter of law to believe that seizing the office of the president of a component institution of a state university system whose investment decisions are made by a board of regents is authorized by international law. One aspect of our above analysis of reasonableness is the availability of alternative courses of action. Alternatives are available, for example, legislative action to control investments by state universities or executive action through the gubernatorial power to appoint regents who would follow a specific policy.

We note the analysis in *In re Weller*, 164 Cal.App.3d 44, 210 Cal.Rptr. 130 (1985), in which the argument was made that the development of the Trident missile system was a violation of international law and so justified the acts of damage done in protest. The court said that, even assuming that development of the Trident system was an international law violation, it did not follow that illegal action was justified when lawful means were available. "Compliance with international law must be sought through the ballot box, or, where appropriate, by court action." *Id.* 210 Cal. Rptr. at 133.

Points three and four are overruled.

■ In points five and six, appellant argues, as he did at trial, that the court erred in refusing to charge the jury on the legal definition of "willfulness." *See Brown v. State*, 167 Tex.Crim. 621, 322 S.W.2d 626, 627–628 (1959); Perkins & Boyce, *Criminal Law* 875 (3d ed. 1982). He also argues that the court erred in refusing to admit evidence, other than appellant's own testimony, regarding his lack of evil intent at the time of the conduct for which he was tried.

The statute under which appellant was charged, Tex.Educ.Code § 4.30, provides in relevant part:

(a) No person or group of persons acting in concert may *wilfully* engage in disruptive activity or disrupt a lawful assembly on the campus or property of any private or public school or institution of higher education or public vocational and technical school or institution.

(b) For the purposes of this section, disruptive activity means:

. . . .

(2) seizing control of any building or portion of a building for the purpose of interfering with any administrative, educational, research, or other authorized activity. . . .

(Emphasis added.) The information charging appellant with the offense alleged in relevant part that

on or about the 20th day of October, A.D. 1986, . . . Chester Lewis Wilson did

. . . intentionally and knowingly *and wilfully* engage in disruptive activity on the campus and property of . . . The University of Texas at Austin, by then and there seizing control of a portion of a building for the purpose of interfering with administrative and educational and other authorized activity. . . .

(Emphasis added.) The trial court instructed the jurors, without objection, that they should find appellant guilty if they concluded beyond a reasonable doubt that he "intentionally, knowingly or wilfully" engaged in the conduct in question. We note, too, that during closing argument, the prosecutor, without objection, explained to the jurors at considerable length that they could find appellant guilty if they believed evidence regarding any *one* of the three mental states included in the charge. The prosecutor also explained to the jurors, without objection, that "willful" was "going to be given its common English meaning." The Code Construction Act provides that "[w]ords and phrases should be read in context and construed according to the rules of grammar and common usage." Tex.Gov't Code Ann. § 311.011(a) (1988). The common meaning of "willful" is "intentional" or "obstinately self-willed." *See Webster's Ninth New Collegiate Dictionary* 1350 (1988). That is, the mental state "willful" in the charge included within it the mental state "intentional."

We find no reversible error here. It was unnecessary for the trial court to charge on willfulness in the first place. *See Bocanegra v. State*, 552 S.W.2d 130 (Tex.Cr.App. 1977). Though it did so anyway, it did so *disjunctively*. And we must assume the jury understood the term "willful" in its ordinary sense. *See Purtell v. State*, 761 S.W.2d 360, 375 (Tex.Cr.App.1988) (word "deliberately" in charge "is to be understood in light of common usage"); 5 Am. Jur.2d *Appeal and Error* § 893 (1962). Therefore, since the jury was authorized to find appellant guilty if it concluded he acted with any *one* of the three mental states given in the charge, and since "willful" as commonly understood includes within it the mental state "intentional," there is no way

appellant could have been harmed by the trial court's refusal to allow evidence of his "good intent." Appellant's "intent", whether good or bad, was simply irrelevant given the charge as it was written. Points five and six are overruled.

 In point seven, appellant argues the trial court was without jurisdiction because the information failed to negate an exception to the offense. Appellant argues that Tex.Educ. Code § 4.30(f) is that exception. *See McElroy v. State*, 720 S.W.2d 490, 492 (Tex.Cr.App.1986); *Few v. State*, 588 S.W.2d 578, 584 (Tex.Cr.App.1979); *Bragg v. State*, 740 S.W.2d 574, 576 (Tex.App. 1987, pet. ref'd); 42 C.J.S. *Indictments and Information* § 140 (1944). We disagree. Texas Pen. Code Ann. § 2.02 states that "an exception to an offense in this Code is so labeled by the phrase: 'It is an exception to the application of....'" This section applies to § 4.30. Tex.Pen. Code Ann. § 1.03(b) (1974). Section 4.30(f) of the Education Code is not, therefore, an exception that the State must negate in the information.

Assuming *arguendo* that § 4.30(f) were a genuine exception, the record shows nonetheless (1) that the information made reasonably clear what criminal offense the State intended *and* (2) that appellant made no objection regarding this matter in the trial court. We conclude the error, if any, was waived. Tex.C.C.P.Ann. art. 1.14(b) (Supp.1989); *Shaw v. State*, 728 S.W.2d 889, 890 (Tex.App.1987, no pet.); *see Hill v. State*, 750 S.W.2d 2, 3 (Tex.App.1988, pet. ref'd, untimely filed); Dix, *Texas Charging Instrument Law*, 38 Baylor L.Rev. 1, 43 (1986). Point seven is overruled.

 Finally, in point eight, appellant argues the trial court erred in denying his motion to dismiss on the basis of the unconstitutionality of Tex.Educ.Code § 4.30. Appellant contends the statute is impermissibly vague and overbroad, in violation of the Fourteenth Amendment and Tex. Const. Ann. art. I, § 8 (1984).

Appellant's motion to dismiss argued simply:

Section 4.30 of the Texas Education Code and the charging instrument are impermissibly vague and overbroad and, as such, violate defendant's constitutional rights as articulated in the First, Fifth, and Fourteenth Amendments to the United States Constitution.

The motion does not invoke the Texas Constitution at all; nor does it specify the precise manner in which § 4.30 is supposedly vague and overbroad. And there is nothing in the record suggesting that appellant informed the trial court of the specifics of his legal theory.

Clearly, any argument appellant might have under the *Texas* Constitution was waived, because it was not raised below. Furthermore, his motion to dismiss was too general to apprise the trial court of the precise nature of his complaint. Therefore, any argument under the *federal* constitution was also waived. Tex.R.App.P.Ann. 52(a) (Supp.1989); *Thomas v. State*, 723 S.W.2d 696, 700–701 (Tex.Cr.App.1986); 60 C.J.S. *Motions* § 10(b) (1969). Point eight is overruled.

The judgment of conviction is affirmed.