Filed 7/10/24  P. v. McCauley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C096952 |
| v. | (Super. Ct. No. F18000158B) |
| MICHAEL TYRONE MCCAULEY, | |
| Defendant and Appellant. | |

A jury found defendant Michael McCauley guilty of involuntary manslaughter, and the trial court sentenced him to four years in state prison.  Defendant now contends (1) the trial court should have instructed sua sponte on the defense of necessity, (2) there is insufficient evidence to support the conviction for involuntary manslaughter because defendant acted under duress and did not cause the victim's death, (3) the trial court should have instructed that duress can negate the mental state required for involuntary manslaughter, and (4) defendant's excess presentence credit should be applied to reduce his period of parole.

We conclude (1) the trial court did not have a sua sponte duty to instruct on necessity, (2) sufficient evidence supports the involuntary manslaughter conviction, (3) defendant has not established prejudicial instructional error regarding duress, and

1

(4) defendant's excess presentence conduct credit should be applied to reduce his period of parole.

We will remand the matter to the trial court and direct it to apply defendant's excess presentence conduct credit to defendant's period of parole. We will otherwise affirm the judgment.

BACKGROUND

Codefendant Sean Bryant and his friend Stanley Norman went to the home of Bryant's girlfriend one morning in April 2018. Both men appeared drunk. Bryant's girlfriend and her minor daughters L. and E. testified about what happened at the house.

Bryant got upset when Norman grabbed the leg of Bryant's girlfriend and said, "I want you." Bryant proceeded to attack Norman for about six hours. There was evidence Bryant shot Norman in the buttocks with an arrow, shot him in the face and body with a paintball gun modified to fire marbles, punched him, struck him with the handle of a knife, and struck him with a chain.

That afternoon, Bryant left the home for 30 to 40 minutes. There was evidence that Norman had a bloody face and torso and marbles embedded in his cheek, chest and stomach. Norman looked like he was barely alive.

Bryant returned to the home with defendant. Bryant held a wood bat. Defendant suggested calling for help, but Bryant would not allow it. Bryant directed defendant to hit Norman with the bat. Defendant said Norman was barely alive and that he did not want to hit Norman, but Bryant insisted and threatened to kill defendant. Defendant hit Norman in the torso with the bat. Bryant yelled at defendant to hit harder and defendant hit Norman again.

Norman's body remained in the front entryway for a couple of days. Bryant instructed his girlfriend and defendant to leave Norman's vehicle off a road. Bryant and defendant moved Norman's body down a hill and burned it, along with Norman's shoes

2

and clothes and a blanket that had blood on it.  Defendant left the house sometime thereafter.

Norman's vehicle was located the following month.  A baseball bat with an apparent blood stain was found in the vehicle.  Defendant's DNA was on the bat.

Defendant admitted to law enforcement that he had been at the girlfriend's house, but he said he left when he saw Norman walking around with marbles embedded in his mouth and face.

The jury found defendant not guilty of murder and voluntary manslaughter but guilty of involuntary manslaughter.  The trial court sentenced defendant to the upper term of four years in state prison.

DISCUSSION

I

Defendant did not assert a defense of necessity and he did not request instruction on such a defense.  He nevertheless contends the trial court should have instructed sua sponte on the defense of necessity.

We review de novo whether a trial court has a duty to give an instruction sua sponte.  (*People v. Simon* (2016) 1 Cal.5th 98, 133; *People v. Guiuan* (1998) 18 Cal.4th 558, 569.)  A trial court must instruct on a defense upon which the defendant relies, or on a defense supported by substantial evidence that is not inconsistent with the defendant's theory of the case.  (*People v. Abilez* (2007) 41 Cal.4th 472, 517.)  On the latter ground, we look at the record to ascertain whether there was evidence that, if believed by the jury, would be sufficient to raise a reasonable doubt and result in a finding in the defendant's favor.  (*People v. Salas* (2006) 37 Cal.4th 967, 982.)

"Except as to crimes that include lack of necessity (or good cause) as an element, necessity is an affirmative defense . . . .  [Citations.]  To justify an instruction on the defense of necessity, a defendant must present evidence sufficient to establish that [he or] she violated the law (1) to prevent a significant and imminent evil, (2) with no reasonable

3

legal alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief that the criminal act was necessary to prevent the greater harm, (5) with such belief being objectively reasonable, and (6) under circumstances in which [he or] she did not substantially contribute to the emergency." (*People v. Kearns* (1997) 55 Cal.App.4th 1128, 1134-1135 (*Kearns*).) "The defense of necessity generally recognizes that 'the harm or evil sought to be avoided by [the defendant's] conduct is greater than that sought to be prevented by the law defining the offense charged.' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 100 (*Coffman and Marlow*).)

Instruction on the defense of necessity requires evidence of the existence of an emergency situation involving an imminent harm that the defendant's illegal act sought to prevent, along with evidence that no reasonable, legal alternative to defendant's violation of the law was available. (*Coffman and Marlow, supra*, 34 Cal.4th at p. 100; *United States v. Bailey* (1980 ) 444 U.S. 394, 410-411; *In re Eichorn* (1998) 69 Cal.App.4th 382, 389; *People v. Weber* (1984) 162 Cal.App.3d Supp. 1, 5.) Although Bryant threatened to kill defendant if defendant did not hit Norman with the bat, Bryant gave defendant the bat and Bryant was unarmed when defendant used it to hit Norman. There is no evidence Bryant made a move to attack defendant. Defendant claims there were guns and other weapons in the house. But defendant hit Norman seconds after Bryant's directive and Bryant did not pick up any weapons in those moments. There is no evidence defendant was aware of any weapons in the house that posed an imminent threat to him or anyone else.

Defendant argues there was also a threat to the lives of Bryant's girlfriend and her daughters. However, there is no evidence that defendant was aware of, or concerned about, any such threat before defendant hit Norman. Defendant's trial counsel argued to the jury that defendant believed his own life was in immediate danger.

4

The evidence does not show the existence of an emergency situation involving an imminent threat of harm.  Nor does it show that any belief held by defendant was objectively reasonable.

Defendant also fails to show there was no reasonable, legal alternative to hitting Norman with the bat.  Defendant was near the front door.  There was no evidence the front door was blocked or that Bryant physically restrained defendant from leaving.  Defendant had the bat and Bryant was unarmed.  The evidence suggests defendant might have fled and summoned help.  (See *People v. Miceli* (2002) 104 Cal.App.4th 256, 267; *Kearns, supra*, 55 Cal.App.4th at pp. 1132-1133, 1135.)

Defendant's claim of instructional error lacks merit.

II

Defendant next argues there is insufficient evidence to support the conviction for involuntary manslaughter because defendant acted under duress and did not cause the victim's death.

A

We begin with defendant's argument that he acted under duress.  The defense of duress is available, except generally in the case of murder, where the defendant reasonably and actually believed that threats to his or her life or the life of another were both imminent and immediate at the time of the commission of the crime.  (§ 26; *Coffman and Marlow, supra*, 34 Cal.4th at p. 100; *People v. Heath* (1989) 207 Cal.App.3d 892, 900 (*Heath*); *People v. Anderson* (2002) 28 Cal.4th 767, 770, 772, 780; see *People v. McKinney* (1986) 187 Cal.App.3d 583, 587-588.)  To establish duress, the defendant must show that he or she acted under circumstances in which the only choice was between imminent death or serious bodily injury and committing the crime.  (*People v. Petznick* (2003) 114 Cal.App.4th 663, 676; *Heath*, at pp. 899-900.)  When acting under duress, the defendant does not have time to form criminal intent because of the imminency and immediacy of the threatened harm.  (*Heath*, at p. 901.)  Unlike necessity,

which does not negate an element of the crime, duress negates intent or capacity to commit the crime. (*In re Eichorn, supra*, 69 Cal.App.4th at p. 389; *Petznick,* at p. 676; *Heath*, at pp. 900-901.) The prosecution must establish beyond a reasonable doubt that the defense of duress is inapplicable. (See *People v. Saavedra* (2007) 156 Cal.App.4th 561, 570-571.)

In determining whether sufficient evidence supports a conviction, " 'we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) And " '[w]e "must accept logical inferences that the jury might have drawn from the circumstantial evidence." ' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) We do not reweigh evidence or reevaluate witness credibility. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Applying the above standard, the evidence was sufficient to support the finding, beyond a reasonable doubt, that defendant did not act under duress when he hit Norman with the bat. Defendant maintains he hit Norman because he was scared, but that is not the standard for establishing duress. For reasons we have explained, defendant had no reasonable cause to believe that, at the time Bryant ordered defendant to hit Norman, there was an imminent and immediate threat of death or serious bodily injury to defendant and/or Bryant's girlfriend and her daughters if defendant refused Bryant's direction. Defendant asserts that Bryant had a gun and a knife on him and Bryant threatened to kill defendant if defendant did not hit Norman. As the People point out,

6

however, the portions of the record defendant cites do not support his assertion that Bryant was armed. Bryant's girlfriend testified that Bryant handed a bat to defendant, and Bryant did not have any additional weapons on him. She said defendant hit Norman within seconds after Bryant directed him to do so, and Bryant did not pick up any weapons during those moments. Defendant fails to support his asserted basis for duress with citation to the record. (*People v. Myles* (2012) 53 Cal.4th 1181, 1222, fn. 14; *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743.)

B

We next turn to defendant's argument that he did not cause the victim's death.

Involuntary manslaughter requires a showing that the defendant's conduct proximately caused the victim's death. (*People v. Butler* (2010) 187 Cal.App.4th 998, 1009.) A defendant is criminally responsible for the victim's death if the defendant's conduct was a substantial factor contributing to the death, even if the victim's preexisting condition, regardless of its cause, was also a substantial factor bringing about the death. (*People v. Catlin* (2001) 26 Cal.4th 81, 155; *Butler*, at p. 1009.) Substantial means not insignificant or merely theoretical. (*People v. Jennings* (2010) 50 Cal.4th 616, 643.) "[A]s long as the jury finds that without the criminal act the death would not have occurred when it did, it need not determine which of the concurrent causes was the principal or primary cause of death." (*Catlin*, at p. 155.) We will not disturb the jury's finding of proximate causation if there is evidence from which it may be reasonably inferred that the defendant's act was a substantial factor in producing the victim's death. (*Butler*, at p. 1010.) Proximate causation also "requires that the death was a reasonably foreseeable, natural and probable consequence of the defendant's act, rather than a remote consequence that is so insignificant or theoretical that it cannot properly be regarded as a substantial factor in bringing about the death." (*Id.* at p. 1009-1010.) "Foreseeability does not require a high probability that the harm will occur, but merely that the harm be

7

' " 'a possible consequence which might reasonably have been contemplated.' " ' "
(*Id.* at p. 1011.)

Although seriously injured, Norman was still alive when defendant hit him with a wood bat more than once. Bryant's girlfriend testified that Norman was still alive when defendant hit him, and she did not see Norman move again after that. L. similarly recalled that Norman was making noises when defendant arrived at the house and Norman did not make any sound after defendant hit him. Applying the standard of review for a sufficiency of the evidence challenge, we conclude that a jury could reasonably find from the evidence that defendant's conduct was a substantial factor contributing to Norman's death and the death was a reasonably foreseeable, natural and probable consequence of defendant's acts.

### III

Defendant also contends the trial court should have instructed that duress can negate the mental state required for involuntary manslaughter.

Although defendant did not request the instruction on duress he now claims should have been given, even if defendant's contention is not forfeited and the trial court erred in not instructing on the possible impact of duress, any such error was harmless because the jury rejected defendant's claim of duress.

The trial court instructed the jury that to convict defendant of involuntary manslaughter, it must find he committed the crime of battery. The trial court further instructed that duress was a defense to battery, and it instructed on the elements of duress. (§ 26; *Coffman and Marlow, supra*, 34 Cal.4th at p. 100; *Heath, supra*, 207 Cal.App.3d at p. 900.) Defendant does not contend that the instruction on those elements was incorrect.

The existence of duress is a question of fact for the jury (*People v. Pena* (1983) 149 Cal.App.3d Supp. 14, 26), and the jury rejected defendant's claim of duress. Because the trial court instructed the jury on duress for the purpose of battery and the jury rejected that defense, any error in failing to instruct on duress for the purpose of negating criminal

8

negligence was harmless under either standard of prejudice. (*People v. Lancaster* (2007) 41 Cal.4th 50, 85; *People v. Clark* (2011) 201 Cal.App.4th 235, 252-253.)

IV

In addition, defendant claims his excess presentence credit should be applied to reduce his period of parole. The People agree. Because the issue primarily involves construing statutes and decisional law governing the application of sentence credits to defendant's parole term and there is no dispute as to the facts, we review the trial court's decision de novo. (*Linton v. DeSoto Cab Co., Inc.* (2017) 15 Cal.App.5th 1208, 1215.)

A defendant may receive credit against his or her term of imprisonment for work and good conduct during presentence confinement. (§ 4019.) Such credit is referred to as conduct credit. (*People v. Duff* (2010) 50 Cal.4th 787, 793.) Conduct credit is applied against the full sentence. (*People v. Sage* (1980) 26 Cal.3d 498, 507-508.)

In addition, a defendant receives credit for time served, i.e., credit against the prison term for all days spent in custody prior to sentencing, as long as the presentence custody is attributable to the behavior that led to the conviction. (§ 2900.5, subd. (a); *Duff*, at p. 793.) Section 2900.5, subdivision (a) provides, in pertinent part, "In all felony . . . convictions, . . . when the defendant has been in custody . . . , all days of custody of the defendant, including days . . . credited to the period of confinement pursuant to Section 4019 . . . , shall be credited upon his or her term of imprisonment . . . . If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served." Subdivision (c) defines "term of imprisonment" to include any period of imprisonment and parole. When the sum of conduct credit and credit for time served exceeds the term of the defendant's prison commitment, the excess credit should be applied to reduce the defendant's parole term. (*In re Ballard* (1981) 115 Cal.App.3d 647, 648-650 and fn.)

9

The parties agree defendant is entitled to 1,442 days of credit for time served under section 2900.5, and an additional 1,440 days of conduct credit under section 4019. The trial court applied 730 days of conduct credit and 730 days of credit for time served toward defendant's four-year prison term, and it acknowledged that defendant was entitled to have his credit for time served in excess of the four-year prison term -- 712 days -- applied to reduce the period of his parole. But it incorrectly concluded that defendant's excess conduct credit -- 710 days -- could not be used to reduce the period of parole. We will remand the matter and direct the trial court to apply the 710 days of excess presentence conduct credit to defendant's period of parole.

DISPOSITION

The matter is remanded to the trial court with direction to apply defendant's excess presentence conduct credit to his period of parole. The judgment is otherwise affirmed. The trial court shall prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

                                                      /S/
                                                MAURO, J.


We concur:


        /S/
HULL, Acting P. J.



        /S/
WISEMAN, J.*

----

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.