Filed 5/27/26 (unmodified opn. attached; second modification)

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WAYNE HANSEN HSIUNG,<br><br>    Defendant and Appellant. | A169697<br><br>(Sonoma County<br>Super. Ct. No. SCR721464)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:\*

It is ordered that the opinion filed herein on April 30, 2026, be modified as follows:

1.     At page 29, in the *first* paragraph of part II, section C, of the discussion, the last sentence, "In any event, defendant is correct," is deleted and replaced with:  "In any event, we agree with defendant that reversal is required because the court's error impacted his constitutional rights.  (See *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)"

2.     At page 31, in the *last* paragraph of part II, section C, of the discussion, the inception citation to *Chapman v. California* is deleted and replaced with a *supra* citation:  "(*Chapman v. California, supra*, 386 U.S. at p. 24.)"

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III of the discussion.

\* Jackson, P. J.; Simons, J.; Burns, J.

1

Respondent's petition for rehearing, filed on May 15, 2026, is denied.

There is no change in the judgment.


Dated: _____          _____, P. J.


A169697/*People v. Wayne Hansen Hsiung*

Trial Court:        Superior Court of the County of Sonoma

Trial Judge:        Laura Passaglia

Counsel:        Justin F. Marceau for Defendant and Appellant.

Law Office of Colleen Flynn and Colleen Flynn for Animal Justice as Amicus Curiae for Defendant and Appellant.

Law Office of Kevin G. Little and Kevin Gerard Little for Professor Jens Bülte as Amicus Curiae for Defendant and Appellant.

Law Office of Shakeer Rahman and Shakeer Rahman; Shaila Nathu; Shayana Kadidal and Jess Vosburgh for Center for Constitutional Rights, American Civil Liberties Foundation of Northern California, and National Lawyers Guild as Amici Curiae for Defendant and Appellant.

Summa and Megan A. Maitia for Climate Defense Project as Amicus Curiae for Defendant and Appellant.

Matthew Liebman for Law Professors Matthew Liebman, Randall S. Abate, Zsea Bowmani, Taimie L. Bryant, David N. Cassuto, Luis E. Chiesa, Rebecca Critser, David A. Dana, Michael C. Dorf, Pamela D. Frasch, Iselin M. Gambert, Kathy Hessler, Heidi M. Hurd, Paul A. Locke, Janice Nadler, Martha C. Nussbaum, Fran Ortiz, Jessica Rubin, Joan Schaffner, Sarah Schindler, Vanessa Shakib, Laurence H. Tribe, Bruce Wagman, and Delcianna J. Winders as Amici Curiae for Defendant and Appellant.

Christopher Berry for Nonhuman Rights Project, Inc., as Amicus Curiae for Defendant and Appellant.

3

Advancing Law for Animals and Vanessa Shakib for Professor Kristen Stilt as Amicus Curiae for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Bridget Billeter and Kelly A. Styger, Deputy Attorneys General, for Plaintiff and Respondent.

Filed 5/12/26 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WAYNE HANSEN HSIUNG,<br><br>    Defendant and Appellant. | A169697<br><br>(Sonoma County<br>Super. Ct. No. SCR721464)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:*

It is ordered that the opinion filed herein on April 30, 2026, be modified as follows: At page 37, new footnote 13 is added after the opinion's last sentence, "As such, his challenge fails," and says, "For the first time in a petition for rehearing, defendant raised several new arguments as to why the savings clause in section 602, subdivision (o) does not cure the statute's alleged constitutional defect. For the purposes of this appeal, defendant forfeited these arguments. (*Samantha B. v. Aurora Vista Del Mar, LLC* (2022) 77 Cal.App.5th 85, 109.)"

Appellant's petition for rehearing, filed on May 8, 2026, is denied.

There is no change in the judgment.

Dated:    05/12/2026                    Jackson, P.J.                , P. J.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III of the discussion.

* Jackson, P. J.; Simons, J.; Burns, J.

Trial Court:  Superior Court of the County of Sonoma

Trial Judge:  Laura Passaglia

Counsel:   Justin F. Marceau for Defendant and Appellant.

      Law Office of Colleen Flynn and Colleen Flynn for
        Animal Justice as Amicus Curiae for Defendant and
        Appellant.

      Law Office of Kevin G. Little and Kevin Gerard Little for
        Professor Jens Bülte as Amicus Curiae for
        Defendant and Appellant.

      Law Office of Shakeer Rahman and Shakeer Rahman;
        Shaila Nathu; Shayana Kadidal and Jess Vosburgh
        for Center for Constitutional Rights, American Civil
        Liberties Foundation of Northern California, and
        National Lawyers Guild as Amici Curiae for
        Defendant and Appellant.

      Summa and Megan A. Maitia for Climate Defense Project
        as Amicus Curiae for Defendant and Appellant.

      Matthew Liebman for Law Professors Matthew Liebman,
        Randall S. Abate, Zsea Bowmani, Taimie L. Bryant,
        David N. Cassuto, Luis E. Chiesa, Rebecca Critser,
        David A. Dana, Michael C. Dorf, Pamela D. Frasch,
        Iselin M. Gambert, Kathy Hessler, Heidi M. Hurd,
        Paul A. Locke, Janice Nadler, Martha C. Nussbaum,
        Fran Ortiz, Jessica Rubin, Joan Schaffner, Sarah
        Schindler, Vanessa Shakib, Laurence H. Tribe,
        Bruce Wagman, and Delcianna J. Winders as Amici
        Curiae for Defendant and Appellant.

      Christopher Berry for Nonhuman Rights Project, Inc., as
        Amicus Curiae for Defendant and Appellant.

Advancing Law for Animals and Vanessa Shakib for Professor Kristen Stilt as Amicus Curiae for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Bridget Billeter and Kelly A. Styger, Deputy Attorneys General, for Plaintiff and Respondent.

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>WAYNE HANSEN HSIUNG,<br><br>        Defendant and Appellant. | A169697<br><br><br>(Sonoma County<br>Super. Ct. No. SCR721464) |

This appeal relates to the right of a criminal defendant to present a complete defense to the jury, including the right to present evidence regarding the defendant's misconceptions regarding the legality of his or her conduct when the charged offenses are specific intent crimes.

Defendant, Wayne Hansen Hsiung, was convicted on two counts of trespass and one count of conspiracy to commit trespass relating to his involvement in animal rights protests at two Sonoma County poultry farms. On appeal, defendant seeks reversal of these counts, arguing: (1) the trial court prejudicially erred by finding his defense of necessity legally unavailable; (2) the court deprived him of his constitutional right to present a complete defense by refusing to instruct the jury or permit him to present evidence or argument related to his good faith mistake of law that his actions

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III of the discussion.

were legally justified under the necessity defense; (3) Penal Code section 31,[1] the aiding and abetting statute on which the jury was instructed, violates the First Amendment to the extent it criminalizes a defendant's "promotion" of another person's illegal conduct; (4) section 602, subdivision (o), the basis of count 2, trespass by refusing or failing to leave property, violates the First Amendment as a content-based restriction on speech; (5) the court prejudicially erred by failing to adequately respond to a jury question regarding the meaning of "promote"; and (6) the prosecutor denigrated his de facto religious beliefs in ethical veganism and animal rights to the jury.

We reject all these arguments except one. We agree with defendant that the trial court erroneously limited his presentation of evidence to the jury related to his two-prong mistake of law defense. Accordingly, we reverse count 1, conspiracy to commit trespass by refusing to leave private property (§§ 182, subd. (a)(1), 602, subd. (o)), and count 4, trespass with intent to interfere with a lawful business (§ 602, subd. (k)), and remand for further proceedings as to these counts. We affirm the judgment as to count 2 (§ 602, subd. (o)).

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant cofounded a grassroots animal rights network called Direct Action Everywhere, or DxE. Through DxE, defendant and other animal rights advocates engaged in "open rescues," a nonviolent tactic in which an individual or group concerned about animal suffering enters private commercial property without permission for the purpose of documenting the conditions of animals confined therein and, if necessary, rescues animals deemed to be in urgent need of veterinary care. The advocates then shared information, including photographs and video footage, relating to the

---

[1] Unless otherwise stated, all statutory citations are to the Penal Code.

2

conditions found during the rescues with the public and law enforcement in order to address the suspected animal suffering.

## I. *The Amended Information.*

On September 26, 2023, an amended information was filed charging defendant with felony conspiracy to commit trespass by refusing to leave private property (§§ 182, subd. (a)(1), 602, subd. (o); count 1); misdemeanor trespass by refusing to leave private property (§ 602, subd. (o); count 2); felony conspiracy to commit trespass with intent to interfere with a lawful business (§§ 182, subd. (a)(1), 602, subd. (k); count 3); and misdemeanor trespass with intent to interfere with a lawful business (§ 602, subd. (k); count 4).

These charges arose from two open rescue incidents involving defendant and his DxE colleagues at poultry farms in Sonoma County. The first incident took place at Sunrise Farms on May 29, 2018, and the second incident took place at Reichardt Duck Farm on June 3, 2019.

## II. *The Trial.*

Trial began on September 8, 2023, and lasted several weeks. Defendant represented himself in propria persona. Many witnesses were called, including representatives from Sunrise Farms and Reichardt Duck Farm, DxE activists, local law enforcement officials, legal professionals, and veterinarians. Defendant testified in his own defense. The following evidence was presented.

### A. Sunrise Farms.

Sunrise Farms (Sunrise) is a privately owned commercial egg farm in Sonoma County with a flock of around 800,000 hens as of 2018. Sunrise is not open to the general public.

3

In July 2016, defendant and his DxE colleagues began investigating Sunrise due to concerns that Sunrise was not complying with animal welfare laws. On several occasions, defendant entered Sunrise through unlocked doors and observed animals that he believed were suffering. In photographs and video footage, defendant documented apparently sick, injured, immobile, and severely neglected animals.

Defendant shared his information with several individuals, including a veterinarian, Dr. Sherstin Rosenberg, and a criminal law professor, Hadar Aviram. Dr. Rosenberg confirmed to defendant that, in her opinion, the video footage showed severe overcrowding at the farm as well as animals suffering from visible illnesses or injuries that made it difficult for them to access food and water. Professor Aviram agreed. She provided defendant a written opinion on May 17, 2018, offering legal justifications for taking actions to assist the animals at Sunrise.[2]

Defendant and his colleagues also took their concerns to state and local law enforcement agencies, including the Sonoma County District Attorney's Office and Sheriff's Office. However, the agencies took no action.

Ultimately, defendant concluded the only way to address what he considered an "ongoing emergency" at Sunrise was to take more direct action. Accordingly, defendant organized an open rescue on May 29, 2018, the last day of the multiday 2018 Animal Liberation Conference, held in the San

---

[2] As we discuss *post*, the trial court excluded or limited portions of Professor Aviram's testimony regarding the fact that she advised defendant, albeit mistakenly, that he and his colleagues were legally justified in trespassing at Sunrise to prevent animals from suffering imminent harm. The court did, however, permit Professor Aviram to testify regarding her more limited opinion that a statute (§ 597e) authorized them to trespass in order to provide food or water to those animals that had been deprived of food or water for over 12 hours.

Francisco Bay Area. During this open rescue incident, defendant and several hundred DxE activists engaged in various forms of protest, including entering private barns, recording and photographing animal conditions, locking people to farm machinery, rescuing animals that appeared to be severely injured or distressed, and holding a candlelight vigil just outside the property. Defendant carried with him Professor Aviram's written opinion that their actions were legally justified to prevent ongoing animal suffering, as well as his prior photographs and footage reflecting the animals' condition.

Michael Weber, an owner of Sunrise, testified that, when he arrived at the farm during the incident, he told the group to leave, insisting they had no right to be there. Defendant referred him to Professor Aviram's opinion and insisted their actions were justified. Defendant, with numerous followers, then walked directly passed Weber toward a large barn, despite Weber's protestations that they posed a biosecurity risk to his animals.

A DxE activist nonetheless opened the barn door, prompting a struggle between farm employees and activists as the employees tried to close the door. A co-owner of the farm repeatedly directed the activists to leave, warning they were on private property. They did not. Instead, they headed toward a second barn housing more chickens. Once there, the activists entered and removed several chickens, insisting they had a right to be there to save the chickens. Eventually, law enforcement arrived and defendant and many others were arrested.

The entire incident was live streamed and shared on social media.

**B.     Reichardt Duck Farm.**

Since approximately 2014, DxE activists were also concerned about the treatment of animals on Reichardt Duck Farm (Reichardt), a privately owned commercial duck farm in Sonoma County. Although Reichardt was not open

to the public, the activists collected information regarding the farm's practices through public record requests and by entering the premises to document what they believed to be ducks suffering from injury and disease and without access to food or water.

Defendant was not involved in the activists' investigation of Reichardt; however, he was aware of it. He shared with Dr. Rosenberg and a former federal prosecutor, Bonnie Klapper, video footage taken on Reichardt property that he obtained from the activists. Dr. Rosenberg opined that the footage indeed showed animals that appeared to be suffering from severe injuries or illnesses. Klapper, in turn, opined that the activists would be legally justified in entering the property to aid or rescue the ducks and to provide them food and water.[3]

On June 3, 2019, soon after defendant obtained the opinions of Dr. Rosenberg and Klapper, and during the Animal Liberation Conference in Berkeley, activists affiliated with DxE entered Reichardt and rescued several ducks, bringing them to a veterinarian to receive food, water, and medical treatment. Some of the activists also locked themselves to Reichardt's front gate.

Defendant, who disagreed with using lockdowns as an activist tool, did not participate in the activists' June 3, 2019 open rescue incident. He did, however, provide them with legal advice and guidance while they were planning it. During the incident, the activists used bike locks to lock themselves by the neck to the farm's processing line. When the line began moving unexpectantly, farm workers were able to stop it before anyone was

---

[3] Discussed *post*, the trial court excluded evidence that Klapper opined that the defense of necessity provided a legal justification for defendant's and defendant's colleagues' actions.

6

seriously injured. However, the line was damaged as a result. The activists then formed a human blockade to prevent ingress and egress from the farm while a few individuals removed duck carcasses from the property.

Later that day, defendant appeared outside the farm to lead a peaceful vigil, during which he voiced support for the other activists. Defendant encouraged people to provide, and did provide, food and water to those who needed it, including law enforcement and farm workers. He discussed his belief, based on the opinions of Klapper and others, that their actions were lawful. He also tried to encourage law enforcement to investigate in exchange for the activists' leaving the area. He was again arrested at the scene.

## C.    Theories and Evidence Excluded from Trial.

The trial court made several rulings before and during trial that impacted defendant's presentation of his theory of the case. For one, defendant sought to present a defense based on the legal doctrine of necessity. Defendant reasoned that he believed, based on legal opinions he received prior to his commission of the charged offenses, that he was justified in trespassing on the poultry farms in order to prevent alleged cruelty to the animals there. He also sought to present a related defense of mistake of law, based on his belief that the necessity doctrine justified his actions. According to defendant, even if his belief were mistaken, it was nonetheless relevant to whether he had the requisite state of mind to commit the specific intent crimes charged in counts 1, 3, and 4.

The trial court ruled that the necessity defense was, as a matter of law, inapplicable in this case. As such, the trial court also precluded defendant from presenting a mistake of law defense based on necessity and from presenting any evidence or argument on the necessity issue. The court did,

7

however, allow defendant to present a more limited defense based on section 597e, a statute that authorizes trespass under certain circumstances in order to provide food or water to an impounded animal that has been deprived of food or water for over 12 hours. Accordingly, the jury was given a mistake of law instruction relating to defendant's alleged belief that section 597e justified his and his colleagues' actions.

## III. *The Jury's Deliberations.*

The jury began deliberating on October 24, 2023. During their deliberations, jurors had numerous questions regarding defendant's mistake of law defense. In particular, the jury queried whether the relevant jury instruction on mistake of law as a defense (CALCRIM No. 3411) applied to mistakes of law generally or only to mistakes of law relating to section 597e. The trial court directed jurors back to the relevant instructions and clarified that they could only consider mistakes of law as to section 597e.

## IV. *The Verdict and Subsequent Appeal.*

On November 2, 2023, after many days of deliberation, the jury convicted defendant of counts 1, 2, and 4 but could not reach a verdict on count 3. The prosecution elected not to retry count 3, and it was subsequently dismissed. This timely appeal followed.

## DISCUSSION

Defendant raises the following issues on appeal: (1) Did the trial court prejudicially err by excluding his necessity defense as a matter of law; (2) did the court prejudicially err by refusing to permit the jury to consider his mistake of law defense predicated on necessity and excluding related evidence; (3) does section 31 violate the First Amendment to the extent it criminalizes a defendant's "promotion" of another person's illegal conduct; (4) did the court prejudicially err by refusing to provide a substantive

8

response to a jury question regarding the meaning of "promote"; (5) does section 602, subdivision (o) violate the First Amendment as a content-based restriction on free speech; and (6) did the trial court prejudicially err by permitting the prosecutor to repeatedly disparage his de facto religious beliefs in animal rights?  We address each issue *post* as appropriate.[4]

## I.     *Necessity Defense.*

At trial, defendant sought to raise a defense of necessity and provided an offer of proof with respect to its elements.  In particular, defendant also proffered evidence that he committed the charged offenses because he believed, based on legal and veterinary opinions he obtained from experts, that his actions were lawful because they were necessary to prevent ongoing animal suffering on the poultry farms.  Defendant thus asked the court to instruct the jury on this defense pursuant to CALCRIM No. 3403.[5]

---

[4] We have read and considered the briefs filed in support of defendant by amici curiae Climate Defense Project, Professor Kristen Stilt, Nonhuman Rights Project, Professor Jens Bülte, Professor Matthew Liebman et al., Animal Justice, and Center for Constitutional Rights et al.

[5] CALCRIM No. 3403 provides:  "In order to establish th[e necessity] defense, the defendant must prove that:

"1. (He/She) acted in an emergency to prevent a significant bodily harm or evil to (himself/herself/ [or] someone else);

"2. (He/She) had no adequate legal alternative;

"3. The defendant's acts did not create a greater danger than the one avoided;

"4. When the defendant acted, (he/she) actually believed that the act was necessary to prevent the threatened harm or evil;

"5. A reasonable person would also have believed that the act was necessary under the circumstances;

"AND

"6. The defendant did not substantially contribute to the emergency." (1st bracketed insertion added.)

The trial court denied defendant's request, finding that a necessity defense was not, as a matter of law, available to prevent harm to animals. The trial court alternatively found that the necessity defense required a showing of immediacy of a perceived danger, which was undermined by the undisputed fact that the crimes occurred during a planned action. On appeal, defendant challenges the court's ruling as prejudicial error.

Generally, a trial court is required to instruct the jury on a defendant's proposed defense if there is substantial evidence to support the defense. (*People v. Salas* (2006) 37 Cal.4th 967, 982.) When, as here, the trial court refuses to give an instruction on the grounds that the proposed defense is legally unavailable, our standard of review is de novo. (*People v. Morales* (2021) 69 Cal.App.5th 978, 990.)

Traditionally, the defense of necessity has covered situations in which physical forces beyond the defendant's control rendered illegal conduct "the lesser of two evils." (*People v. Heath* (1989) 207 Cal.App.3d 892, 899 (*Heath*).) "California appellate courts have recognized the necessity defense 'despite the absence of any statutory articulation of this defense and rulings from the California Supreme Court that the common law is not a part of the criminal law in California.' " (*In re Eichorn* (1998) 69 Cal.App.4th 382, 388 (*Eichorn*).)

"The defense of necessity generally recognizes that ' "the harm or evil sought to be avoided by [defendant's] conduct is greater than that sought to be prevented by the law defining the offense charged." ' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 100.) As such, the necessity defense is permitted based on public policy considerations. (*People v. Kearns* (1997) 55 Cal.App.4th 1128, 1134–1135.) In other words, "[n]ecessity does not negate any element of the crime, but represents a public policy decision not to punish such an individual despite proof of the crime." (*Heath, supra*, 207

Cal.App.3d at p. 901.)  However, because the necessity defense " 'represents a public policy decision not to punish . . . an individual despite proof of the crime' " (*Eichorn, supra*, 69 Cal.App.4th at p. 389), the defense is "very limited" (*People v. Beach* (1987) 194 Cal.App.3d 955, 971).

Whether necessity exists is generally a question of fact.  (*Eichorn, supra*, 69 Cal.App.4th at p. 389.)  To justify an instruction on the necessity defense, the defendant must proffer evidence sufficient to establish that he or she "violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he [or she] did not substantially contribute to the emergency."  (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1035; *Heath, supra*, 207 Cal.App.3d at p. 901; see CALCRIM No. 3403.)  If the defendant fails to proffer substantial evidence on any of these six elements, the trial court may refuse to give a necessity instruction.  (See *People v. Trippet* (1997) 56 Cal.App.4th 1532, 1539 (*Trippet*); *In re Weller* (1985) 164 Cal.App.3d 44, 48–50.)

Here, the trial court refused to instruct the jury on defendant's proposed necessity defense after concluding, as a matter of law, that the defense only applies to a defendant who broke the law to prevent significant harm to a human rather than a "non-human."

On appeal, defendant counters that no California court has carved out an animal exception to the "significant evil" element of the necessity defense. Instead, he says, courts have looked to whether a California public policy is implicated by the alleged harm in a necessity case.  Thus, he reasons, because preventing animal cruelty is public policy in California, animal

11

cruelty may be considered a "significant evil" for purposes of the necessity defense in a particular case.

Defendant is correct that, because the necessity defense is based on public policy, "we must look to public policy to determine whether the defense was available to the defendant on the facts presented here." (*People v. Youngblood* (2001) 91 Cal.App.4th 66, 73 [only the Legislature is vested with the responsibility to declare the state's public policy] (*Youngblood*).) If public policy considerations do not support a necessity defense, the court need not give the instruction. (See *id.* at pp. 73–74 [necessity defense unavailable to defendant who hoarded dozens of cats to prevent them from being euthanized because California law expressly authorizes cat euthanasia]; *People v. Garziano* (1991) 230 Cal.App.3d 241, 242 [necessity defense unavailable to defendant who committed crimes while demonstrating outside an abortion clinic because abortion is a protected right]; *United States v. Oakland Cannabis Buyers' Cooperative* (2001) 532 U.S. 483, 491 [149 L.Ed.2d 722] [necessity defense must not be applied in a manner that would be at odds with the Legislature's " 'determination of values' "]; *People v. Galambos* (2002) 104 Cal.App.4th 1147, 1152 ["An unexpressed common law defense should not be engrafted onto a statutory scheme that embodies an inconsistent policy determination"].)

Relevant here, there is a clear legislative determination, embodied in section 597, that animal cruelty is against public policy in California. (§ 597, subd. (b) ["whoever, having the charge or custody of an animal . . . , subjects an animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses an animal, or fails to provide the animal with proper food, drink, or shelter, or protection from the weather . . . , is, for each offense, guilty of a crime"]; see *Farm Sanctuary, Inc. v. Department of*

12

*Food & Agriculture* (1998) 63 Cal.App.4th 495, 504 [" 'It has long been the public policy of this country to avoid unnecessary cruelty to animals' "].) However, the existence of this public policy does not mean self-help is an available remedy to prevent suspected animal cruelty occurring on someone else's private property, particularly when such property is a commercial farm regulated by a separate statutory scheme, to wit, the Food and Agricultural Code. (See Food & Agr. Code, § 9164 ["In order to prevent the spread of any livestock disease, it is unlawful for any person, that does not have a written permit issued by the director, to remove, or cause to be removed, any livestock from slaughterhouse pens, yards, corrals, or similar holding places where livestock is held for the purpose of immediate slaughter, except directly into the slaughterhouse that controls such pens, yards, corrals, or similar holding places"].)

Moreover, even were we to accept defendant's public policy argument, this alone would not support a necessity instruction. As stated *ante*, there must be substantial evidence supporting each of the elements of the defense in order to warrant bringing it to the jury. Assuming arguendo a defendant who commits a crime to prevent animal cruelty could be entitled to present a necessity defense in an appropriate case, this is not such a case.[6]

---

[6] Neither this court nor the California Supreme Court has ruled that the necessity defense applies exclusively to situations involving physical harm to a human. As noted by defendant and amici curiae, at least one appellate court in this state has considered the necessity defense in a case involving the risk of harm to animals without dismissing the defense as legally unavailable—yet, without specifically addressing whether the common law supports the applicability of the necessity defense in such a case. (*Youngblood, supra*, 91 Cal.App.4th at pp. 72–74.) Courts in other states and various legal treatises, in turn, have included property damages as a type of harm that can trigger the necessity defense in criminal cases. (E.g., *Strong v. State* (Alaska Ct. App. 2022) 508 P.3d 1127, 1131–1133 & fn. 18 [trial court

Defendant contends both his offer of proof and the trial evidence were sufficient to support each element of the necessity defense. His offer demonstrated that: (1) defendant believed he had no choice but to trespass on the poultry farms to prevent "ongoing and unlawful harm to animals" that was documented in photographs and video footage; (2) no adequate legal course of action was available since " 'he had reached out to the authorities for assistance on dozens of occasions (including on the morning of the May 29 demonstration at Sunrise)' to no avail"; (3) his actions did not create a greater danger than the one avoided because all activists wore "veterinarian-approved biosecurity gear" while entering barns and were trained in nonviolence; (4) his good faith belief in the necessity was based on opinions he received from legal and veterinary experts; (5) his belief was objectively reasonable based on "multiple investigations . . . that showed animals suffering and opinions to that effect"; and (6) he did not contribute to the "animal suffering." (See *People v. Pepper, supra*, 41 Cal.App.4th at p. 1035.)

We disagree that defendant's offer of proof is sufficient to support a necessity defense, as did the trial court in its alternative ruling. California

---

erred in finding as a matter of law that boat damage and destruction of salmon catch resulting from hydraulic spill did not constitute a " 'significant evil' " for purposes of the necessity defense], citing 2 LaFave, Substantive Criminal Law (3d ed. 2018) § 10.1(d)(1), p. 166 [recognizing that " '[t]he harm avoided need not be physical harm (death or bodily injury)'; it 'may . . . be harm to property' "]; 2 Robinson, Criminal Law Defenses (July 2021 supp.) § 124(g)(3), pp. 62–63 [observing that, although some states limit the necessity defense to cases involving threats of personal injury, that approach is not the universal view and it does not accord with the policy rationale behind the defense; "[s]ince the proportionality requirement demands that the harm resisted must always be greater than that actually caused, there can be no danger in leaving the triggering conditions open to seemingly minor threats"].) To be sure, this debate raises interesting issues. However, for reasons discussed *post*, we need not delve into them.

14

case law is clear: " '[T]here must be a showing of *imminence* of peril before the defense of necessity is applicable.  A defendant is "not entitled to a claim of . . . necessity unless and until he demonstrates that, given the imminence of the threat, violation of [the law] was the only reasonable alternative." *United States v. Bailey* (1980) 444 U.S. 394, 411 [62 L.Ed.2d 575, 591, 100 S.Ct. 624].  The uniform requirement of California authority discussing the necessity defense is that the situation presented to the defendant be of an *emergency* nature, that there be threatened physical harm, and that there was no legal alternative course of action available.' (*People v. Weber* (1984) 162 Cal.App.3d Supp. 1, 5 [208 Cal.Rptr. 719]; *People v. Heath, supra*, 207 Cal.App.3d at p. 901 [same]; *People v. Patrick* [(1981)] 126 Cal.App.3d [952,] 960 ['a well-established central element [of the necessity defense] involves the emergency nature of the situation, i.e., the imminence of the greater harm which the illegal act seeks to prevent'].)" (*People v. Galambos, supra*, 104 Cal.App.4th at pp. 1162–1163, 1st, 6th & 7th bracketed insertions added, 1st & 3d italics added.)[7]

Thus, stated otherwise: " 'The situation presented to the defendant [relying on a necessity defense] must be of an emergency nature, threatening physical harm, and lacking an alternative, legal course of action. . . .  An important factor of the necessity defense involves the balancing of the harm to be avoided as opposed to the costs of the criminal conduct. . . .  [T]he threatened harm is in the immediate future, which contemplates the

---

[7] As noted in *People v. Patrick, supra*, in "[s]ome formulations of the necessity defense [the instructions] specifically include an 'imminence' requirement," while "[i]n others, the immediacy of the danger becomes a factor in assessing the reasonableness of the actor's belief regarding the magnitude of the 'greater harm' he seeks to prevent."  (126 Cal.App.3d at p. 960, fn. 6.)

defendant having time to balance alternative courses of conduct. [Citation.] The defendant has the time, however limited, to form the general intent required for the crime, although under some outside pressure.' " (*Eichorn, supra,* 69 Cal.App.4th at pp. 387, 389–391, 1st & 2d bracketed insertions added [defendant, a homeless man who violated an ordinance banning sleeping in parks, was entitled to an instruction on the necessity defense based on evidence that lack of sleep constituted a significant evil and he had no means to procure an alternative place to sleep].)

As these principles reflect, "the defense of necessity more properly applies to situations when the person asserting the defense is faced with an extraordinary, or at least unusual, situation. The basic context of this defense is that, '[u]nder the force of extreme circumstances, conduct which would otherwise constitute a crime is justifiable and not criminal; the actor engages in the conduct out of necessity to prevent a greater harm from occurring.' (1 Wharton, Criminal Law [(15th ed. 1994)] Defenses, § 90, p. 614, fn. omitted.) . . . This would be consistent with the classic settings in which the defense of necessity has been discussed, such as to steal food to prevent starvation, or to sacrifice the life of another to avoid 'drowning, starvation, or other catastrophe.' (1 Witkin & Epstein, Cal. Criminal Law [(3d ed. 2000)] Defenses, § 55, p. 391.)" (*People v. Lee* (2005) 131 Cal.App.4th 1413, 1429–1430.)

Defendant's case (*People v. Lovercamp* (1974) 43 Cal.App.3d 823 (*Lovercamp*)) is instructive. There, an inmate was convicted of escaping from prison after the trial court refused to instruct the jury on the inmate's theory that she escaped to avoid an imminent sexual attack by a group of fellow inmates. Reversing, the reviewing court held that "a limited defense of necessity is available if the following conditions exist: (1) The prisoner is

16

faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; [¶] (2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; [¶] (3) There is no time or opportunity to resort to the courts; [¶] (4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and [¶] (5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." (*Id*. at pp. 825, 831–832, 833, fn. omitted.)

The *Lovercamp* court took pains to explain the limited nature of its holding given the traditional role of necessity in our common law: "In a humane society some attention must be given to the individual dilemma. In doing so the court must use extreme caution lest the overriding interest of the public be overlooked. The question that must be resolved involves looking to all the choices available to the defendant and then determining whether the act of escape was the only viable and reasonable choice available. . . . While we conclude that under certain circumstances a defense of necessity may be proven by the defendant, at the same time we place rigid limitations on the viability of the defense in order to insure that the rights and interests of society will not be impinged upon. We have not formulated a new rule of law but rather have applied rules long ago established in a manner which effects fundamental justice." (*Lovercamp, supra*, 43 Cal.App.3d at p. 827.)

Here, in contrast, the "long ago established [rules]" underlining the defense of necessity (*Lovercamp, supra*, 43 Cal.App.3d at p. 827) do not support its application given the absence of any showing of an emergency situation threatening imminent harm. (See *Trippet, supra*, 56 Cal.App.4th at p. 1539 ["The standard for evaluating the sufficiency of the evidentiary

17

foundation [for a necessity instruction] is whether a reasonable jury, accepting all the evidence as true, could find the defendant's actions justified by necessity"].) Indeed, as defendant himself acknowledged: "[T]hese were not hasty decisions . . . , these were actions that were taken in good faith with every effort made to comply with the law."

The record is in accord. Defendant and other DxE activists described preparations that began well in advance of the Sunrise incident on May 29, 2018, and the Reichardt incident on June 13, 2019. These preparations involved: (1) obtaining legal advice from lawyers regarding the implications of the activists' plans; (2) hiring a veterinarian to opine on the conditions of the animals living on the poultry farms based on video and photographic evidence previously gathered by activists; and (3) organizing and training groups of activists to participate in various protest activities that included peaceful vigils outside the properties, a lockdown on farm property, and animal rescues from inside barns conducted by activists donning biohazard suits.

Indeed, the fact that both incidents, Sunrise in 2018 and Reichardt in 2019, occurred during or just before the Animal Liberation Conference, a large animal rights activism event in Berkeley, reflect the level of detail and advanced planning that went into them.

This evidence undermines any claim that defendant had no choice but to commit trespass because he was acting in an emergency situation to prevent imminent, significant harm to animals. To be sure, the dictionary defines "emergency" as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." (Merriam-Webster's Unabridged Dict. <https://unabridged.merriam-webster.com/unabridged/emergency> [as of Apr. 29, 2026]; accord, Health &

18

Saf. Code, § 1797.70 [defining "emergency" for purposes of the Good Samaritan laws as "a condition or situation in which an individual has a need for immediate medical attention, or where the potential for such need is perceived by emergency medical personnel or a public safety agency"].) Defendant's and defendant's DxE colleagues' unlawful actions simply cannot be characterized as a response to an unforeseen situation presenting a need for immediate medical attention.

We also have another concern. Defendant's offer of proof ignores that "there is in place an explicit and comprehensive legislative scheme for enforcement of [animal] anticruelty laws [which] includ[es] direct participation of both concerned residents and registered humane officers . . . ." (*Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 143–144 (*Mendes*).) In particular, Penal Code section 599a provides, " 'When complaint is made, on oath, to any magistrate authorized to issue warrants in criminal cases, that the complainant believes' animal cruelty is taking place or will take place at a specific site, 'the magistrate *must* issue and deliver immediately a warrant directed to any sheriff, police or peace officer or officer of any [Bus. & Prof. Code, § 10400 corporation], authorizing him to enter and search that building or place, and to arrest any person there present violating, or attempting to violate' any anticruelty law." (*Mendes*, at p. 143, italics added.)

While defendant claims he made "[m]ultiple reports of animal cruelty to regulatory authorities and local authorities, including the Sonoma County District Attorney's Office and Sonoma County Sheriff," there is no evidence he took the appropriate and legally available step of filing a complaint under oath pursuant to section 599a before committing these trespasses. (See *Mendes, supra*, 160 Cal.App.4th at p. 143 ["the Penal Code expressly provides

19

a remedy for those . . . [who] believe, inter alia, animal cruelty 'is being, or is about to be' committed in 'any particular building or place' "].) Under these circumstances, we question defendant's claim that there were no legal means available to prevent harm to these animals.

Finally, we borrow wise words written by the Honorable Clinton W. White, our First Appellate District colleague, over 30 years ago: "We do not mean to ignore or trivialize this country's history of civil disobedience (e.g., the Boston Tea Party, the Underground Railroad, Freedom Marches in the South, and some of the Vietnam War protests). From the perspective of history many unlawful acts may be seen as justified or even 'necessary.' Some have been rendered lawful by finding constitutional defects in the prohibitory enactments. But the determination that these actions were 'necessary' can only be made from a distance, and then not with legal precision. Unless the laws are held unconstitutional, those challenging or defying them must be prepared to bear the short-term consequences of their actions in the hope that society will benefit and that historians will look charitably upon them." (*In re Weller* (1985) 164 Cal.App.3d 44, 48–50 [necessity defense unavailable to defendants who trespassed to protest at a nuclear missile manufacturing plant due to defendants' "failure to present legally sufficient evidence that [they] lacked an adequate alternative to criminal trespass"].)[8]

Because the evidence offered by defendant was insufficient to permit a reasonable jury to find his unlawful actions were done "in an emergency" to

---

[8] To the extent defendant's out-of-state authority (*State v. Spokane County Dist. Court* (2021) 198 Wash.2d 1, 12–16 [491 P.3d 119]) is inconsistent with the California authority cited herein, we respectfully disagree with it.

prevent a "significant bodily harm or evil" (CALCRIM No. 3403), the trial court properly refused to instruct the jury on the necessity defense.

## II. *Mistake of Law Defense Predicated on Defendant's Good Faith Belief that the Necessity Defense Was Available to Him.*

Our holding that the necessity defense was legally unavailable to defendant does not, however, end our discussion of the necessity defense. An issue remains regarding whether the jury was entitled to know that defendant honestly, albeit mistakenly, believed the necessity defense justified his actions for purposes of establishing a different defense: mistake of law.

At trial, defendant requested a jury instruction on the mistake of law defense based on his good faith belief that his conduct at Sunrise and Reichardt was lawful—negating any specific intent to commit trespass or conspiracy as charged in counts 1, 3, and 4. He based this good faith belief on two legal grounds: necessity and section 597e, a statute authorizing trespass under certain circumstances to supply food or water to an impounded animal that has been deprived of food and water for more than 12 consecutive hours. (§ 597e.)

The court granted defendant's request as to section 597e, giving the jury a modified version of CALCRIM No. 3411 (Mistake of Law As a Defense).[9] However, the court refused his request as to necessity, reasoning that necessity "cannot be the basis for a mistake of law defense" because "[n]ecessity does not negate any element of an underlying offense . . . including specific intent." Accordingly, the court excluded all evidence

---

[9] The modified version of CALCRIM No. 3411 (Mistake of Law As a Defense) provided that defendant could not be found guilty of conspiracy to commit trespass (counts 1 and 3) or trespass by interfering with or obstructing a business (§ 602, subd. (k); count 4) "if he made an honest or good faith mistake about the law," such that he "did not have the specific intent/mental state required for the crime . . . ."

21

relating to necessity, including any discussion in the legal opinions defendant obtained from Professor Aviram and former federal prosecutor Klapper before participating in the Sunrise and Reichardt incidents, relating to necessity as a legal justification for his actions.

The jury had several questions regarding defendant's mistake of law defense, as limited to section 597e, during their deliberations. For example, the jury queried: "Does Mistake of Law as a Defense apply to the law that was broken (602.o in count 1), or the law he believed made his act lawful (597E)?" (*Sic.*) The court responded: "I refer you back to instructions 3407 and 3411."

A few days later, the jury queried: "We have been instructed not to use 597e as a defense. [¶] In count 1, 3 & 4 Mistake of Law As A Defense (3411) can we consider 597e as the 'Mistake of Law'?" (*Sic.*) The court responded, "Yes." Nonetheless, later the same day, the jury queried: "In Section 3411 of the Juror Instructions, 'Mistake of Law as a Defense'—paragraph 3, line 5— does the phrase 'the law' mean specifically section 602, or 'the law' considered generally?" The court responded: "When you consider 602(o) or 602(k) as referenced in cts 1, 3 and 4, you can consider mistake of law as to 597(e) [*sic*]."

Finally, on November 2, 2023, shortly before reaching a verdict, the jury queried: "In requirement 2 of Counts 1 and 3, Conspiracy to commit trespass, is it sufficient that just the defendant be found not to be operating under a mistake of law, or must at least two persons be found to be not operating under a mistake of law, for purposes of establishing intent?" The court responded: "For the defendant to be found guilty of conspiracy, you must find that defendant and at least one other alleged co-conspirator had the requisite intent. [¶] If you were to find that defendant had the requisite

intent for conspiracy, but that every alleged co-conspirator lacked the requisite intent for conspiracy, as a result of their mistake of law, then defendant cannot be found guilty of conspiracy."

On appeal, defendant contends his constitutional rights to a trial by jury and to present a defense were violated by the court's refusal to instruct on mistake of law based on his belief that his conduct was justified on necessity grounds and its exclusion of evidence and argument regarding necessity. Defendant reasons that his belief regarding the lawfulness of his conduct "goes directly to the question of whether [he] had the specific intent required for conviction." We agree.

## A. Mistake of Law as a Defense to Trespass (§ 602, subd. (k)) and Conspiracy.

While a mistake of law is not a defense to a general intent crime, a mistake of law may be a defense to a specific intent crime when the mistake negates the defendant's specific intent to commit the crime. (*People v. Noori* (2006) 136 Cal.App.4th 964, 977; *People v. Howard* (1984) 36 Cal.3d 852, 862–863.) Thus, CALCRIM No. 3411, the standard instruction on mistake of law, provides, in relevant part: "The defendant is not guilty of [the charged crime] if [he or she] made an honest or good faith mistake about the law, if that mistake shows that [he or she] did not have the [specific intent or mental state] required for the [crime] . . . ." (CALCRIM No. 3411.)

A defendant is entitled to a mistake of law instruction " 'if the evidence supports a reasonable inference that any such claimed belief was held in good faith.' " (*People v. Koenig* (2020) 58 Cal.App.5th 771, 808 (*Koenig*).) "The instruction is properly refused if circumstances ' "indicate that although defendant may have 'believed' he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith." ' " (*Ibid.*; see *People v. Stewart* (1976) 16 Cal.3d 133, 140 [" 'Whether a

23

claim is advanced in good faith does not depend solely upon whether the claimant believes he was acting lawfully; the circumstances must be indicative of good faith' "].)

On appeal, we review a trial court's refusal to instruct the jury on a valid criminal defense de novo. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)

Here, the charged offenses in counts 1 and 4, trespass under section 602, subdivision (k) and conspiracy, are both specific intent crimes. A trespass conviction requires proof that the defendant entered property "for the purpose of injuring property or property rights or with the intention of interfering with, obstructing, or injuring any lawful business or occupation carried on by the owner of the land . . . ." (§ 602, subd. (k).) A conspiracy conviction, in turn, "requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy." (*People v. Morante* (1999) 20 Cal.4th 403, 416.)

Thus, under CALCRIM No. 3411, a defendant charged with trespass under section 602, subdivision (k) or conspiracy would not be guilty if he or she made an honest or good faith mistake regarding the lawfulness of his or her actions, if that mistake showed the defendant did not have the specific intent or mental state required for the crime. *People v. Urziceanu* (2005) 132 Cal.App.4th 747 (*Urziceanu*) is illustrative. There, a defendant charged with selling marijuana and conspiracy to sell marijuana was precluded at trial from asserting a mistake of law defense. The appellate court reversed, holding that while the defendant's good faith mistake of law was not a

24

defense to the general intent crime of selling marijuana, it was a defense to the conspiracy to commit that crime. (*Id*. at pp. 775–776.) *Urziceanu* explained that for the defendant to be found guilty of conspiracy, he must have had the specific intent to commit the crime that was the object of the conspiracy, meaning he "must have known what he was doing was illegal and he must have intended to violate the law . . . ." (*Id*. at p. 776.)

*Urziceanu* followed *People v. Marsh* (1962) 58 Cal.2d 732 (*Marsh*). (*Urziceanu, supra*, 132 Cal.App.4th at pp. 778–779.) In *Marsh*, the California Supreme Court expounded: "The essence of the crime of conspiracy is the 'evil' or 'corrupt' agreement to do an unlawful act. It is the evil intent that makes a combination criminally indictable. 'The association of persons with an honest intent is not conspiracy, and one of the tests on a conspiracy trial is, did the accused act in ignorance without criminal intent? In other words, did they honestly entertain a belief that they were not committing an unlawful act?' " (*Marsh*, at p. 743.) Thus, in *Marsh*, in which the defendants were accused of conspiring to practice medicine without a license, the trial court erred in instructing the jury that criminal intent was present even if the defendants believed their conduct was lawful. (*Id*. at pp. 742–744.) Nonetheless, the Supreme Court found the court's error nonprejudicial based on evidence proving the defendants knew it was unlawful to practice medicine without a license. (*Id*. at p. 744; cf. *People v. Meneses* (2008) 165 Cal.App.4th 1648, 1664 ["In defendant's association with others, his asserted belief that they were not committing an unlawful act when referring insureds for fees was a defense to conspiracy, and the trial court properly instructed the jury on this point"].)

The People try to distinguish this case law by arguing mistake of law and necessity are "incompatible." They reason: "The necessity defense

25

required [defendant] to acknowledge that his conduct in committing trespass was a crime, but that it was justified to prevent imminent harm. Mistake of law could only be used to negate the specific intent for conspiracy by showing that [defendant] mistakenly believed that the trespass was not a crime." (Italics omitted.) Thus, the People argue, "One cannot simultaneously believe their conduct was lawful (mistake of law) while also believing they had no alternative but to break the law (necessity)." This logic is flawed.

It is defendant's *nonculpable* state of mind, not his awareness that he was committing a trespass, that is relevant. As *Urziceanu* explains, a defendant, in defense to the charge of conspiracy, may not prove a good faith mistake of law by arguing he or she was "unaware of the precise statute he was violating"; however, a defendant may " 'offer evidence of their good faith or mistake.' (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 76, p. 288.)" (*Urziceanu, supra*, 132 Cal.App.4th at p. 779.) In other words, " 'the law recognizes honest purpose, not dishonest ignorance of the law, as a defense to a charge of committing a crime requiring "specific intent." ' " (*Id.* at p. 779; accord, *Marsh, supra*, 58 Cal.2d at p. 743 [" 'The mere fact that the conspiracy has for its object the doing of an act which may be unlawful, followed by the doing of such act, does not constitute the crime of conspiracy, unless the jury find that the parties were actuated by a criminal intent' "].)

Thus, in *Urziceanu,* the defendant was entitled to present evidence of his good faith belief that his selling marijuana, a statutory crime, was lawful under the Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5) because such evidence tended to negate the mens rea required for conspiracy to sell marijuana. (*Urziceanu, supra*, 132 Cal.App.4th at p. 779.)

Accordingly, defendant should have been permitted to present to the jury a mistake of law defense based on his good faith, albeit incorrect, belief

26

that committing a trespass was legally justified by necessity, notwithstanding his awareness that trespassing was a crime. Under *Marsh* and *Urziceanu*, if the jury believed that defendant had a good faith belief his actions were lawful, based on legal advice he received on the applicability of the common law defense of necessity, this fact would have negated the specific intent to violate the law required for a conviction on counts 1 and 4. "That, ultimately, [should have been] a question of fact for a properly instructed jury." (*Urziceanu, supra*, 132 Cal.App.4th at p. 779; accord, *Koenig, supra*, 58 Cal.App.5th at pp. 806–807 [mistake of law instruction was "not incompatible with the charged conduct" when the offense required knowledge of a material omission in defendant's tax return].)

## B. Evidence Supporting a Mistake of Law Defense Predicated on Necessity.

As mentioned, "all that is required to warrant the [mistake of law] instruction is 'evidence from which it can be inferred that defendant['s] alleged belief in the lawfulness of [his] conduct was in good faith . . . .' " (*Koenig, supra*, 58 Cal.App.5th at p. 808, 1st bracketed insertion added.)

Defendant proffered evidence that included legal opinions from Professor Aviram, a criminal law professor, and Bonnie Klapper, a former federal prosecutor, to disprove that he had the specific intent to commit trespass or conspiracy to commit trespass. As the trial court acknowledged, the "vast majority" of these opinions were dedicated to the necessity defense, which the lawyers deemed a valid defense to the planned open rescue at Sunrise or Reichardt.

In particular, Professor Aviram opined, "[I]n a situation such as the one captured in the [Sunrise] footage I saw, and based on my legal expertise as a criminal justice scholar and law professor, it is my opinion that an open rescuer who removes sick animals from this facility should be able to

27

successfully argue for a necessity defense against any charges of trespass or misappropriation." (Boldface omitted.) Professor Aviram also presented a detailed legal analysis with respect to each element of the necessity defense based on the footage she reviewed, including the "emergency" element.

Similarly, Klapper offered defendant a legal opinion shortly before the Reichardt incident in 2019 that entering the property and giving aid or rescuing animals would be justified under the circumstances she reviewed in footage recorded at the farm.

This proffered evidence could adequately support a jury instruction on the mistake of law defense predicated on defendant's good faith belief that the necessity defense was available to him. It tended to prove defendant acted not with a criminal specific intent to commit trespass or conspiracy but with an "honest purpose," based on (mistaken) legal advice, that the necessity defense justified, in the absence of other legal remedies, his entering the farms to prevent significant ongoing harm to the confined animals. (*Urziceanu, supra*, 132 Cal.App.4th at pp. 776–780 [evidence of the defendant's good faith belief he was not violating the law in the context of a conspiracy charge was sufficient to support mistake of law instruction]; *Koenig, supra*, 58 Cal.App.5th at p. 809 [evidence was sufficient to support mistake of law instruction when the defendant's nondisclosure of material information was a good faith decision based on the legal advice of several attorneys].)

Yet, as discussed *post*, the trial court found that "any evidence that goes particularly to the issue of necessity is not relevant." As such, the trial court barred testimony on necessity and ordered the redaction of any reference to necessity in the legal opinions defendant relied upon, even while acknowledging the "vast majority of their opinions" relate to necessity and

merely "touch upon 597e . . . ." The court also instructed the jury to "consider mistake of law *as to 597(e)* [*sic*]" when the jury asked during deliberations whether the term " 'the law' " in CALCRIM No. 3411 means " 'the law' considered generally." (Italics added.) The court's rulings were erroneous. While we make no decision as to other potential evidentiary grounds for limiting or excluding the opinions of the veterinarians and legal professionals, we do hold that defendant should have been permitted to rely on some or all of those opinions to prove to the jury his good faith, albeit mistaken, belief that he and his colleagues had a right to trespass to rescue or to prevent significant harm to animals, and not just to provide food and water to those animals coming under section 597e. Such evidence is relevant to defendant's state of mind for purposes of counts 1 and 4.

In so holding, we note that neither party has addressed the issue of whether defendant's mistaken belief that he had a right to trespass was, in fact, held in good faith. Nor do we address this issue. Rather, we hold only that defendant should have been entitled to present to the jury his defense and supporting evidence that his good faith reliance on the opinions of veterinarians and legal professionals justified his actions.

## C. Prejudicial Error.

Defendant contends the court's errors—failing to instruct on mistake of law predicated on necessity and excluding relevant evidence—were structural in nature, *requiring* reversal. The People, sticking to their claim that no mistake of law instruction was warranted, make no attempt to rebut this argument. In any event, defendant is correct.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, *Chambers v. Mississippi* [(1973) 410 U.S. 284] [35 L.Ed.2d 297], or in the Compulsory Process or Confrontation clauses of the Sixth

29

Amendment [citations], the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' [Citations.] We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard." (*Crane v. Kentucky* (1986) 476 U.S. 683, 690 [90 L.Ed.2d 636]; see *People v. Stewart, supra*, 16 Cal.3d at pp. 140–141 [failure to instruct on defendant's theory that he lacked intent to commit embezzlement because he believed in good faith that he was authorized to appropriate the funds "constitutes a denial of [his] right [to present a defense] which 'is in itself a miscarriage of justice' "]; *People v. Ahmed* (2018) 25 Cal.App.5th 136, 143–144 [reversal required when defendant was deprived of the right to assert a medical marijuana defense].)

Here, defendant was indeed deprived of the right to assert a defense. An instruction on mistake of law predicated on necessity went to the crux of whether defendant formed the specific intent to commit the charged offenses of trespass and conspiracy. Yet, defendant was restricted to a mistake of law defense predicated on section 597e, which only provided a limited justification for trespassing in order to provide food and water to impounded animals that had gone without food and water for 12 or more consecutive hours. This limitation proved disingenuous in the face of unseen evidence that defendant believed he and his colleagues were legally entitled to enter the property for the purpose of removing suffering animals to provide necessary medical care. Indeed, as mentioned, defendant entered those properties with the legal opinions of Professor Aviram and Klapper *in hand*, for the express purpose of explaining to those present and watching on social

media that his actions were justified. The jury heard a much more limited version of the story.[10]

It cannot be said on this record that the refusal to permit defendant to present a mistake of law defense predicated on necessity was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].) Accordingly, counts 1 and 4 must be reversed.

## III. *Constitutionality of Relevant Criminal Statutes.*

In the event of a retrial, we briefly address those of defendant's remaining contentions that are likely to resurface.[11]

Defendant contends two criminal statutes applied in his case are unconstitutional: section 31 (aiding and abetting) and section 602, subdivision (o) (trespass by refusing or failing to leave property; count 2). His contentions are reviewed de novo (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–801) and with the understanding that " 'courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 696).

---

[10] Not surprisingly, the prosecutor elicited testimony from a Sunrise owner that he never saw activists providing food or water to the animals, and then cross-examined Professor Aviram regarding the limited circumstances to which section 597e applied, noting it would not apply to "large groups of people entering onto private property and . . . not engaged in providing an animal food or water" but, rather, using video recording equipment to "document[] the conditions of the farm . . . ."

[11] We need not consider defendant's contentions regarding the exclusion of specific evidence relating to his criminal intent and the adequacy of the court's response to a jury inquiry regarding the term "promote." And, we decline on forfeiture grounds to consider defendant's contention that the trial court prejudicially erred by permitting the prosecutor to treat his de facto religious beliefs in animal rights and veganism with hostility in front of the jury. (*In re M.H.* (2016) 1 Cal.App.5th 699, 713.)

## A.    Section 31 (Aiding and Abetting).

Defendant contends section 31, on which the jury was instructed, violates the First Amendment to the extent it extends criminal liability to a defendant for " 'promoting' " another person's civil disobedience.  (Boldface omitted.)  He reasons that criminalizing conduct that " 'promotes' " the actions of another is facially overbroad and impermissibly restricts speech as applied to his case.

Defendant's facial constitutional attack on section 31 for "promoting" the actions of another fails because the term "promote" or "promoting" is simply not mentioned in the statute.  Rather, section 31 provides: "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, or persons who are mentally incapacitated, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed."

Moreover, to the extent defendant raises an as-applied challenge based on the use of the term "promote" in the relevant jury instructions, this challenge also fails.  "An as-applied challenge ' "contemplates analysis of the facts of a particular case . . . to determine the circumstances in which the statute . . . has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right." [Citation.]  When reviewing an as-applied

32

constitutional challenge on appeal, we defer to the superior court's findings on historical facts that are supported by substantial evidence and then independently review the constitutionality of the statute under those facts.' " (*Cahill Construction Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 777, 789–790.)

Here, the relevant jury instruction provided: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:

"1. The perpetrator committed the crime;

"2. The defendant knew that the perpetrator intended to commit the crime;

"3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and,

"[4.] The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.

"Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, *promote* or instigate the perpetrator's commission of that crime.

"If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor." (CALCRIM No. 401, italics added.)

The California Supreme Court has endorsed this language as a correct statement of the law, holding that "a person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, *promotes*,

encourages or instigates, the commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 561, italics added.)

And, while we are unaware of any California case addressing the constitutionality of section 31 to the extent it restricts one who promotes the commission of a crime, numerous such cases have addressed the constitutionality of another criminal statute's use of the term "promote." Section 186.22, which criminalizes "willfully promot[ing]" certain gang activity, has survived several constitutional challenges, including, as here, First Amendment challenges based on its guarantee of freedom of association.[12] (E.g., *In re Alberto R.* (1991) 235 Cal.App.3d 1309, 1322 (*Alberto R.*); *People v. Green* (1991) 227 Cal.App.3d 692, 703–704; cf. *People v. Castaneda* (2000) 23 Cal.4th 743, 752.)

For example, in *Alberto R.*, the defendant "allege[d] specific terms in [section 186.22] make it so uncertain and so broad the statute fails to give fair notice of what conduct it proscribes, thereby inviting arbitrary enforcement by local police, and includes all forms of association in violation of the First Amendment." (*Alberto R., supra*, 235 Cal.App.3d at pp. 1321–1322.) The *Alberto R.* court disagreed, noting the phrase " 'to promote, further, or assist' " was "specifically addressed by the court in *Green. (People v. Green* [(1991)] 227 Cal.App.3d [692,] 703–704.)" (*Id.* at p. 1322.) Thus, *Alberto R.* continued, "We agree with that court's conclusions, there is nothing unconstitutionally vague or overbroad about the phrase 'promote, further, or assist,' which has been consistently used by the courts to describe

_____

[12] Section 186.22, subdivision (a) provides, in relevant part: "A person who actively participates in a criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity, and who *willfully promotes*, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished . . . ." (Italics added.)

'aiding and abetting' ([citation]; see *People v. Beeman* (1984) 35 Cal.3d 547, 560 [citations]) . . . ." (*Ibid.*)

We agree with this analysis.  Further, we note that when, as here, a defendant challenges the constitutionality of a statute as overbroad based on the First Amendment, he or she must establish the statute " 'prohibits a " 'substantial amount of constitutionally protected conduct.' " ' " (*People v. Rubalcava* (2000) 23 Cal.4th 322, 333; see *People v. Green, supra*, 227 Cal.App.3d at p. 704 ["Where a provision is of doubtful validity we must, if possible, impose on it a construction which eliminates doubts as to its constitutionality.  (*In re Kay* (1970) 1 Cal.3d 930, 942 [citations].)"].) Defendant has not met this high standard.

On its face, section 31 does not invade the area of protected freedoms. It does not seek to regulate speech but *conduct*.  Moreover, not just any conduct but criminal conduct.  No defendant, including our defendant, can be convicted as an aider and abettor unless there is proof beyond a reasonable doubt that he or she *knew* the perpetrator intended to commit the crime and *intended*, before or during the commission of the crime, to aid and abet the perpetrator in the commission of the crime.  (CALCRIM No. 401.)  Thus, the rights of speech and association are implicated only to the extent their purpose is to perpetuate criminal activity.  "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." (*City Council v. Taxpayers for Vincent* (1984) 466 U.S. 789, 800 [80 L.Ed.2d 772].) Accordingly, defendant's challenge fails.

**B.     Constitutionality of Section 602, Subdivision (o) (Count 2).**

Lastly, we address defendant's contention that section 602, subdivision (o) violates the First Amendment as a content-based restriction

35

on free speech because a person's entry onto a property is either protected or criminalized depending on the content of their expressive activity.

Section 602, subdivision (o)(1) prohibits a person from willfully committing a trespass by "[r]efusing or failing to leave land, real property, or structures belonging to, or lawfully occupied by, another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that they are acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession. . . ."

Section 602, subdivision (o)(1) further provides, "[T]his subdivision does not apply to persons engaged in lawful labor union activities that are permitted to be carried out on the property by the Alatorre–Zenovich–Dunlap–Berman Agricultural Labor Relations Act of 1975 . . . or by the federal National Labor Relations Act." (§ 602, subd. (o)(1).) According to defendant, this language authorizes discrimination based on speech since it protects individuals engaged in trespassing for the purpose of engaging in labor-related expressive activity while subjecting those engaged in other types of expressive activity (such as animal rights activity) to criminal liability.

As the People note, however, defendant fails to acknowledge other language in section 602, subdivision (o) expressly stating, "[T]his subdivision *does not apply to persons on the premises who are engaging in activities protected by the California or United States Constitution . . . .*" (§ 602, subd. (o)(1), italics added.)

Based on this italicized language, which specifically excludes from the scope of the statute persons engaged in protected activities, we are at a loss

as to how section 602, subdivision (o) could be applied in a manner that would infringe upon a person's constitutional rights.  Nor does defendant offer any such explanation.  As such, his challenge fails.

## DISPOSITION

The judgment of conviction as to counts 1 and 4 is reversed.  The matter is remanded for further proceedings consistent with this opinion, which may include retrial on these counts.  In all other regards, the judgment is affirmed.


Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

A169697/*People v. Wayne Hansen Hsiung*

37

A169697/People v. Wayne Hansen Hsiung

Trial Court:         Superior Court of the County of Sonoma

Trial Judge:        Laura Passaglia

Counsel:           Justin F. Marceau for Defendant and Appellant.

                        Law Office of Colleen Flynn and Colleen Flynn for Animal Justice as Amicus Curiae for Defendant and Appellant.

                        Law Office of Kevin G. Little and Kevin Gerard Little for Professor Jens Bülte as Amicus Curiae for Defendant and Appellant.

                        Law Office of Shakeer Rahman and Shakeer Rahman; Shaila Nathu; Shayana Kadidal and Jess Vosburgh for Center for Constitutional Rights, American Civil Liberties Foundation of Northern California, and National Lawyers Guild as Amici Curiae for Defendant and Appellant.

                        Summa and Megan A. Maitia for Climate Defense Project as Amicus Curiae for Defendant and Appellant.

                        Matthew Liebman for Law Professors Matthew Liebman, Randall S. Abate, Zsea Bowmani, Taimie L. Bryant, David N. Cassuto, Luis E. Chiesa, Rebecca Critser, David A. Dana, Michael C. Dorf, Pamela D. Frasch, Iselin M. Gambert, Kathy Hessler, Heidi M. Hurd, Paul A. Locke, Janice Nadler, Martha C. Nussbaum, Fran Ortiz, Jessica Rubin, Joan Schaffner, Sarah Schindler, Vanessa Shakib, Laurence H. Tribe, Bruce Wagman, and Delcianna J. Winders as Amici Curiae for Defendant and Appellant.

                        Christopher Berry for Nonhuman Rights Project, Inc., as Amicus Curiae for Defendant and Appellant.

Advancing Law for Animals and Vanessa Shakib for Professor Kristen Stilt as Amicus Curiae for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Bridget Billeter and Kelly A. Styger, Deputy Attorneys General, for Plaintiff and Respondent.